**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Kaisa Group Holdings Ltd., *et al.*,[1] | Case No. 26-[●] (JPM) |
| Debtors in Foreign Proceedings. | Joint Administration Requested |

**DECLARATION OF TAM LAI LING**
**IN SUPPORT OF THE MOTION FOR (I) RECOGNITION OF**
**FOREIGN MAIN PROCEEDINGS; (II) RECOGNITION OF FOREIGN**
**REPRESENTATIVE; AND (III) RELATED RELIEF UNDER CHAPTER 15**
**OF THE BANKRUPTCY CODE AND THE MOTION PURSUANT TO FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE 2002 AND 9007 REQUESTING ENTRY**
**OF AN ORDER (I) SCHEDULING THE RECOGNITION HEARING, AND (II)**
**APPROVING THE FORM AND MANNER OF SERVICE OF NOTICE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I, Mr. Tam Lai Ling, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration (this "Declaration").[2] In accordance with the Board Resolution (as defined herein) of Kaisa Group Holdings Ltd. ("Kaisa" or the "Debtor"), I was appointed as the authorized representative of Kaisa. Moreover, I serve as a senior advisor at Kaisa, and am responsible for formulating investment and financing strategies for Kaisa. Additionally, I previously served as vice chairman and executive director of Kaisa from March 2010 to December 2014. Consistent

---

[1] The Debtors in these above-captioned Chapter 15 proceedings (these "Chapter 15 Cases") are collectively: (i) Kaisa Group Holdings Ltd., incorporated in the Cayman Islands as an exempted company with limited liability with Hong Kong registration number 39433977; and (ii) Rui Jing Investment Company Limited, incorporated in the British Virgin Islands ("BVI") as a limited liability company with the company number 1420460. The Debtors' mailing address is at 30/f, The Center, 99 Queen's Road Central, Central, Hong Kong.

[2] Capitalized terms used but not defined have such meanings set forth elsewhere in this Declaration, the Recognition Motion (as defined herein), or the Kaisa Explanatory Statement (as defined herein), as applicable.

with these roles, I have gained knowledge of Kaisa's history, day-to-day operations, assets, financial condition, business affairs, and books and records. I was also personally involved in the formulation and implementation of the Kaisa Hong Kong Scheme and the Restructuring (each as defined below). All facts set forth in this Declaration are based upon (a) my personal knowledge; (b) my review of relevant documents and any and all documents prepared and/or filed in connection with the Kaisa Hong Kong Proceeding and the above-captioned Chapter 15 cases; (c) information supplied to me by the officers, directors, employees, or professionals retained by Kaisa; or (d) my experience and knowledge of Kaisa's assets and financial condition.

2.　　　I am making this Declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.　　　Kaisa is the subject of a restructuring proceeding entitled *In the Matter of Kaisa Group Holdings Ltd.* concerning a scheme of arrangement (the "Kaisa Hong Kong Scheme"), between Kaisa and certain Kaisa Scheme Creditors (as defined herein) before the Court of First Instance of the High Court of the Hong Kong Special Administrative Region of the People's Republic of China (the "Hong Kong Court") (Case Number HCMP 1705/2024).

4.　　　On September 27, 2024, Kaisa's board ("Kaisa's Board") passed the Board Resolution authorizing me to take certain actions as necessary to act as Kaisa's foreign representative in connection with the Chapter 15 Cases as they relate to Kaisa.

5.　　　I submit this Declaration in support of the (a) *Chapter 15 Petition for Recognition of a Foreign Proceeding* with respect to Kaisa (the "Kaisa Chapter 15 Petition"); (b) *Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"); and (c)

2

*Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 Requesting Entry of an Order (I) Scheduling the Recognition Hearing, and (II) Approving the Form and Manner of Service of Notice* (the "Scheduling Motion"), each filed contemporaneously herewith.[3]

6.  As further detailed herein, a series of events placed certain Chinese property developers, including the Group (as defined herein), under financial stress and created impediments to addressing certain payment maturities.  The relief requested of this Court and the financial restructuring effectuated through the Chapter 15 Cases, and the corresponding Kaisa Hong Kong Proceeding, is a meaningful step towards right-sizing the Group's balance sheet and placing it in a position for long-term success to the benefit of the Group's employees, creditors, customers, vendors, and all of its stakeholders.

## **BACKGROUND**

**I.**     **Kaisa's Business Operations and Preexisting Capital Structure Prior to the Hong Kong Schemes**

7.  Kaisa is the parent company of a comprehensive investment group (the "Group"), covering industries such as property development, investment and management, culture and sport, business management, tourism, hotel and catering, sea transportation, healthcare, science, and international education.  Kaisa was founded in Hong Kong in 1999,[4] and its shares have been listed on the Main Board of The Stock Exchange of Hong Kong Limited (the "SEHK") since December 9, 2009 under stock code 1638.

---

[3]   Reference is made to the *Declaration of Ang Chee Khian Desmond as Hong Kong Counsel to Kaisa and Rui Jing in Support of the Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code With Respect to Debtors Kaisa Group and Rui Jing Investment Company* (the "Hong Kong Counsel Declaration").

[4]   Kaisa has been incorporated as an exempted company with limited liability in the Cayman Islands since August 2, 2007 under the Companies Law, Chapter 22 (Law 3 of 1961, as consolidated and revised from time to time) of the Cayman Islands ("Cayman Companies Law").  Kaisa is registered as a non-Hong Kong company under section 776 of Hong Kong Companies Ordinance.

8.      Kaisa's subsidiaries are located across various jurisdictions, including the Cayman Islands, the British Virgin Islands ("BVI"), the People's Republic of China ("PRC"),[5] and the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong"). Rui Jing[6] serves as a key offshore investment holding entity through which Kaisa indirectly holds a substantial part of the Group's offshore and onshore assets and operations through various intermediary holding entities.[7]

**A.    Events Leading to the Restructuring in 2025**

9.      In 2016, Kaisa completed a scheme of arrangement in the Cayman Islands and Hong Kong to restructure its offshore debt (the "2016 Cayman Scheme" and the "2016 Hong Kong Scheme," and together, the "2016 Restructuring").  On July 14, 2016, this Court issued an order recognizing and enforcing the 2016 Hong Kong Scheme and the order of the Hong Kong court sanctioning the 2016 Hong Kong Scheme.[8]

10.     Following the 2016 Restructuring and until 2021, the Group's operations remained generally stable.  However, in the second half of 2021, Chinese property developers and Chinese capital markets entered a turning point that had an impact on the entire industry, including Kaisa. Both investment in real estate development and housing sales plummeted, and property developers frequently began to default on their debts.

---

[5]    "PRC" in this Motion refers to the mainland of the People's Republic of China, and, for the purposes of this Declaration, does not encompass Hong Kong.

[6]    Rui Jing has been incorporated in the BVI under the BVI Business Companies Act, 2004 as a limited liability company since July 23, 2007.

[7]    Onshore assets and liabilities refer to those assets and liabilities located in the PRC and do not include assets and liabilities located in Hong Kong and other countries or regions are referred to as "offshore" assets and liabilities.

[8]    *See In re Kaisa Group Holdings Ltd.*, Case No. 16-11303 (SHL) (Bankr. S.D.N.Y. July 14, 2016).  Kaisa only sought recognition of the 2016 Hong Kong Scheme, and did not seek recognition of the parallel 2016 Cayman Scheme.

4

11.     Macroeconomic pressures, including reduced bank lending for real estate development coupled with the adverse impact of the COVID-19 pandemic, resulted in a reduction of access by property developers to onshore capital and cash flow.  This also caused an adverse reaction in the offshore capital market.  Even after the worst effects of the COVID-19 pandemic subsided, the liquidity crisis faced by the industry continued to affect many developers in the PRC, including the Group, due to limited access to external capital to refinance existing indebtedness and reduced revenues from contracted sales.  Consequently, Kaisa's real estate transaction volumes, the area sold, and the amount of sales declined, leading to reduced cash generation and liquidity pressures.

12.     Since 2021, the Group actively worked to manage its liquidity and maintain stability, including ensuring timely construction and delivery of new developments and projects, attempting to dispose of certain assets, accelerating sales and revenue collections, and reducing operational expenses.  However, the Group's contracted sales figures and liquidity situation did not see sufficient improvements, and the Group found it more difficult to offload assets than originally anticipated.

**B.    Events of Default**

13.     As a result of the significant pressure on cash flow and liquidity constraints described above, Kaisa was unable to pay outstanding interest and principal on certain of its Existing Notes (as defined and described more fully below).  Kaisa's failure to pay the outstanding principal or interest with respect to certain Existing Notes triggered a cross-default of all the Existing Notes.

14.     In addition to the Existing Notes, there were events of default and cross-defaults in relation to the Group's and Kaisa's other offshore debts.  Kaisa and certain other Group entities in Hong Kong, the Cayman Islands and the BVI received demand notices and statutory demands with

5

respect to the defaulted debts. Certain creditors also sought to enforce their security relating to secured debts. As of June 30, 2024, an aggregate principal amount of approximately USD 12.27 billion of the Group's offshore debts was immediately due and payable, and an aggregate principal amount of approximately USD 11.91 billion of Kaisa's offshore debts (on a standalone basis) was immediately due and payable.

### C.  Legal Proceedings Commenced Against Kaisa and the Group

#### i.  Proceedings in Hong Kong

15.   In July 2023, the trustee of the Existing Notes presented a winding-up petition in the Hong Kong Court against Kaisa (HCCW 295 of 2023) (as amended, the "HK Winding-Up Proceedings") in respect of unpaid principal and interest amounts owed under the July 2023 Senior Notes (the "Winding Up Petition").[9]

#### ii.  Proceedings in New York

16.   In January 2023, Oasis, a purported beneficial holder of four series of Existing Notes with an aggregate principal amount of $90 million, brought suit against Kaisa and Chang Ye Investment Company Limited ("Chang Ye"), one of the Existing Subsidiary Obligors (as defined herein) under the Existing Notes. Oasis's complaint was dismissed without prejudice in November 2023. On April 9, 2024, Oasis filed a new complaint against Kaisa and Chang Ye related to the same four Existing Notes (the "April 2024 Complaint," and the New York state court action, the "Oasis Litigation"). On May 31, 2024, Kaisa and Chang Ye filed a motion to dismiss the April 2024 Complaint in relation to three of the four tranches of Existing Notes, on the grounds that Oasis failed to obtain proper authorization to bring a claim as a beneficial holder of those

---

[9]   The Winding Up Petition was ultimately dismissed on September 22, 2025, following the successful implementation of the Schemes and the occurrence of the Restructuring Effective Date (as defined herein).

Existing Notes.  On March 17, 2026, the New York Supreme Court denied Kaisa and Chang Ye's motion to dismiss the April 2024 Complaint and ordered the parties to exchange initial disclosures and conduct other discovery.  *Oasis Inv. II Master Fund Ltd. v. Chang Ye Inv. Co. Ltd. et al*, No. 651835/2024 (N.Y. Sup. Ct. Mar. 17, 2026) (ECF No. 28) (order denying motion to dismiss).

17.     I understand that the Oasis Litigation concerns claims arising from the Existing Notes, which constitute part of the In-Scope Debts that were compromised and discharged pursuant to the Hong Kong Schemes.  I further understand that the New York state court has directed the parties to proceed with initial disclosures and discovery.  In the absence of interim relief from this Court, Kaisa would be required to expend substantial resources responding to discovery and continuing merits litigation in New York before this Court can consider recognition and related relief.

18.     I understand that permitting the Oasis Litigation, or similar actions by other creditors, to proceed could interfere with the implementation of the Hong Kong Schemes and the Restructuring, including by allowing individual creditors to seek recoveries outside the framework of the Hong Kong Schemes and by depleting the resources of the restructured business to the detriment of the Restructuring.  I further understand that, if such an action were ultimately to proceed to judgment, the entry of a final judgment in excess of the applicable threshold of USD 20.0 million that remains unstayed or undischarged for the requisite period would constitute an "Event of Default" under the New Notes indentures, including pursuant to section 6.01(f) thereof, and that any resulting acceleration or payment default on other material indebtedness could independently trigger a cross-default under section 6.01(e) thereof.  I understand that the occurrence of any such Event of Default would give rise to acceleration and/or enforcement rights across the six tranches of New Notes and eight tranches of MCBs issued pursuant to the Hong

7

Kong Schemes. I further understand that these risks are particularly acute because the New Notes are governed by New York law and enforcement actions and remedies would be pursued in this jurisdiction. For these reasons, I believe that provisional relief staying such actions in the United States, including the Oasis Litigation, is necessary to preserve the status quo and prevent immediate and irreparable harm to the Restructuring pending this Court's determination of the Recognition Motion, and that recognition should give full force and effect in the United States to the compromise and discharge of claims under the Hong Kong Schemes.

iii.    <u>Proceedings in the PRC against Kaisa and the Group</u>

19.    There have also been proceedings including litigation and arbitration in the PRC against Kaisa and the Group, relating to, among other things, (i) overdue payments in relation to loans and other financing arrangements, (ii) overdue payments in relation to construction projects and supplier payments, (iii) disputes in relation to properties sold by the Group, and (iv) joint development contractual disputes. As of the date of this Motion, no counterparty has taken action in the aforementioned proceedings to enforce judgments and arbitration awards against Kaisa outside the PRC.

**D.    Kaisa's Capital Structure Prior to the Restructuring in 2025**

20.    This section provides an overview of the Debtors' capital structure prior to the holistic restructuring of their financial indebtedness (the "Restructuring") pursuant to the Hong Kong Proceedings and the implementation of the Hong Kong Schemes.

iv.    <u>Kaisa's Standalone Assets and Liabilities</u>

21.    On a standalone basis, as of June 30, 2024, Kaisa's total assets amounted to approximately USD 8.01 billion and Kaisa's total liabilities amounted to approximately USD 15.74 billion. Kaisa's main assets consisted of intercompany receivables from various of its

subsidiaries, amounting to approximately USD 7.80 billion.  Aside from directly held shares in offshore intermediary holding companies, and bank accounts in Hong Kong institutions holding restricted cash of approximately USD 0.76 million, as of June 30, 2024, Kaisa did not have any directly held assets, whether onshore or offshore.

22.     The majority of Kaisa's current assets could not be collected or converted into cash immediately.  Kaisa's liabilities consisted entirely of current liabilities relating to certain borrowings and intercompany payables of approximately USD 11.98 billion, and other payables of USD 3.77 billion.

v.     Kaisa's Financing Arrangements

23.     Kaisa's financing arrangements included a variety of securities and loans, where it was either a primary obligor (*e.g.*, a note issuer, security issuer, or borrower) or a guarantor.  As of June 30, 2024, the total principal amount (*i.e.*, excluding interest) of Kaisa's indebtedness was approximately USD 15.27 billion, including: (i) primary obligations totaling a principal amount of USD 11.7 billion, incurred (a) as an issuer of sixteen (16) series of publicly issued, U.S. dollar denominated, senior secured notes (the "Existing Notes"); (b) as an issuer of one series of publicly issued perpetual securities (the "Perpetual Securities"); and (c) as a borrower in respect of a loan facility extended by Deutsche Bank AG, Hong Kong Branch, as the original lender (the "DB Loan," and together with the Existing Notes and Perpetual Securities, the "Kaisa Primary Obligations"); and (ii) as the guarantor for a total principal amount of USD 3.57 billion with respect to payment obligations for certain financing arrangements of the Group, including both onshore and offshore financing arrangements (collectively, the "Kaisa Guarantee Obligations," and together with Kaisa's Primary Obligations, the "Kaisa Total Existing Debt").  As further explained hereinafter, only certain of Kaisa's guarantee obligations were subject to the Kaisa Hong

9

Kong Schemes (the "Kaisa In-Scope Debt," as further defined and described below, as compared to the "Kaisa Out-of-Scope Debt," as further defined and described below).

24.     The payment obligations under each series of Existing Notes and the DB Loan were guaranteed by 59 of Kaisa's wholly-owned subsidiaries, including Rui Jing (collectively, the "Existing Subsidiary Obligors").  The payment obligations under the Perpetual Securities were not guaranteed by Kaisa or the Existing Subsidiary Obligors.  The Existing Subsidiary Obligors are incorporated under the laws of Hong Kong or the BVI and are listed in Exhibit H to the Hong Kong Counsel Declaration.  Furthermore, the shares of the Existing Subsidiary Obligors were pledged for the holders of the Existing Notes pursuant to the terms of the relevant indentures for the Existing Notes to secure the payment obligations of Kaisa and the guarantee obligations of the Existing Subsidiary Obligors.

25.     ***Kaisa Primary Obligations.***  The Kaisa Primary Obligations, with an aggregate face value of approximately USD 11.70 billion, were comprised of:

a)     An aggregate principal amount of approximately USD 400 million in 6.5% senior notes with a maturity date of December 7, 2021 (the "December 2021 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited ("Serica"), in its capacity as the notes trustee governing the Existing Notes (the "Existing Notes Trustee");

b)     An aggregate principal amount of approximately USD 550 million in 11.25% senior notes with a maturity date of April 9, 2022 (the "April 2022 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

c)     An aggregate principal amount of approximately USD 1.147 billion in 8.5% senior notes with a maturity date of June 30, 2022 (the "June 2022 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

d)     An aggregate principal amount of approximately USD 300 million in 8.65% senior notes with a maturity date of July 22, 2022 (the "July 2022 Senior

Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

e) An aggregate principal amount of approximately USD 300 million in 10.5% senior notes with a maturity date of September 7, 2022 (the "September 2022 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

f) An aggregate principal amount of approximately USD 600 million in 11.95% senior notes with a maturity date of October 22, 2022 (the "October 2022 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

g) An aggregate principal amount of approximately USD 700 million in 11.5% senior notes with a maturity date of January 30, 2023 (the "January 2023 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

h) An aggregate principal amount of approximately USD 750 million in 10.875% senior notes with a maturity date of July 23, 2023 (the "July 2023 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

i) An aggregate principal amount of approximately USD 980 million in 9.75% senior notes with a maturity date of September 28, 2023 (the "September 2023 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

j) An aggregate principal amount of approximately USD 500 million in 11.95% senior notes with a maturity date of November 12, 2023 (the "November 2023 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

k) An aggregate principal amount of approximately USD 2.247 billion in 9.375% senior notes with a maturity date of June 30, 2024 (the "June 2024 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

l) An aggregate principal amount of approximately USD 500 million in 10.5% senior notes with a maturity date of January 15, 2025 (the "January 2025

11

Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

m)    An aggregate principal amount of approximately USD 700 million in 11.25% senior notes with a maturity date of April 16, 2025 (the "April 2025 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

n)    An aggregate principal amount of approximately USD 500 million in 9.95% senior notes with a maturity date of July 23, 2025 (the "July 2025 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

o)    An aggregate principal amount of approximately USD 1 billion in 11.7% senior notes with a maturity date of November 11, 2025 (the "November 2025 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

p)    An aggregate principal amount of approximately USD 300 million in 11.65% senior notes with a maturity date of June 1, 2026 (the "June 2026 Senior Notes"), as amended, supplemented, or otherwise modified from time to time, between, among others, Kaisa and Serica Agency Limited, as the Existing Notes Trustee;

q)    An aggregate principal amount of approximately USD 200 million in 20.518% perpetual securities (the "Perpetual Securities"); and

r)    An aggregate principal amount of approximately USD 24.68 million in LIBOR + 7.5% loan facility due January 6, 2022, with Deutsche Bank AG, Hong Kong branch as the original lender (the "DB Loan").

26.    ***Kaisa Guarantee Obligations.***    The Kaisa Guarantee Obligations, totaling a principal amount of approximately USD 3.57 billion, consisted of:

i.    A guarantee granted by Kaisa and the Existing Subsidiary Obligors in relation to a USD 215 million loan at 8.5%, issued by TFI Securities and Futures Limited to the primary obligor, Joyful Richness Holdings Limited, due October 14, 2022 (the "TFI Loan");

ii.    A guarantee granted by Kaisa in relation to 8.45% senior guaranteed notes issued by Brilliant Bridge Holdings Limited, with an aggregate principal amount of approximately USD 60 million, due September 1, 2022 (the "Brilliant Bridge Notes");

12

iii. A guarantee granted by Kaisa in relation to 14.40% notes issued by Ye Chang Investment Company Limited, secured by a share pledge by Ye Chang over certain shares in Kaisa Prosperity, with an aggregate principal amount of approximately USD 80 million, due October 3, 2022 (the "Ye Chang Notes");

iv. A guarantee granted by Kaisa in relation to private placement notes at 6.60%, issued by Flourish Century Holdings Limited, with an aggregate principal amount of approximately USD 110 million, due February 4, 2022 (the "Flourish Notes");

v. A term loan facility with Shandong Hi-Speed Facility, with an aggregate principal amount of approximately USD 101.10 million at 14.4%, due October 3, 2022 (the "Shandong Hi-Speed Facility" and together with the TFI Loan, Flourish Notes, Brilliant Bridge Notes, Ye Chang Notes, and the Kaisa Primary Obligations, the "Kaisa-In-Scope Debt"), guaranteed by Kaisa and secured by a share pledge of over 67% of the shares in Kaisa Prosperity;

vi. Guarantees granted by Kaisa in relation to 11 onshore debt facilities with certain onshore subsidiaries as the primary obligors, and issued by various lenders, with certain of those debts being secured by mortgages over development projects, debentures, or share pledges over one or more project companies located in the PRC, with a principal outstanding amount of USD 2.95 billion (the "Kaisa Guaranteed Onshore Debts").

vii. A loan facility of approximately USD 57.63 million relating to the financing of a property located in The Center at No. 99 Queen's Road Central, Hong Kong (the "Center Property"), borrowed by The Center (30) Limited (the "Center Loan" and together with the Kaisa Guaranteed Onshore Debts, the "Kaisa Out-of-Scope Debt"), guaranteed by Kaisa and its wholly-owned subsidiaries Crystal Path Holdings Limited and Kaisa Ventures Limited, secured by various share charges and debentures over assets associated with the Center Property.

27. The Existing Notes and the Flourish Notes were the only Kaisa Total Existing Debts governed by United States (i.e., New York) law.

| Summary of Kaisa In-Scope and Out-of-Scope Debt | |
|---|---|
| Kaisa In-Scope Debt<br>*Kaisa's Debt Subject to the Hong Kong Scheme* | Kaisa Primary Obligations<br>• 16 series of Existing Notes (guaranteed by Existing Subsidiary Obligors) governed by NY law<br>• Perpetual Securities<br>• DB Loan (guaranteed by Existing Subsidiary Obligors)<br>Kaisa Guarantee Obligations<br>• TFI Loan (guaranteed by Existing Subsidiary Obligors)<br>• Brilliant Bridge Notes<br>• Ye Chang Notes<br>• Flourish Notes (governed by NY law)<br>Shandong Hi-Speed Facility |
| Kaisa Out-of-Scope Debt<br>*Kaisa's Debt Not Subject to the Hong Kong Scheme* | Kaisa Guarantee Obligations<br>• 11 onshore debt facility guarantees<br>• Center Loan |

28. Additionally, the Group had various onshore financing arrangements involving onshore borrowers or issuers and/or onshore lenders, including those that were guaranteed by Kaisa. These financing arrangements included borrowings from various PRC financial institutions, as well as other publicly issued corporate bonds and privately issued debt instruments. As of June 30, 2024, the total aggregate outstanding principal amount of the Group's onshore financing arrangement, including bank loans, asset-backed securities, and corporate bonds, was approximately USD 7.03 billion.

## II. The Restructuring and Description of the Hong Kong Schemes and Issuance of New Instruments[10]

### A. The RSA

29. Following thorough consideration, consultation, and negotiation, Kaisa and the Group determined that a holistic restructuring was in the best interests of Kaisa, Rui Jing, and

---

[10] In the case of any conflict between the summaries provided herein and the Hong Kong Schemes or the applicable indentures with respect thereto, the Hong Kong Schemes or the New Instrument Indentures, as applicable, will govern in all respects.

14

those with an economic interest in the Debtors, in particular, the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors (both as defined herein). Accordingly, Kaisa and Rui Jing publicly launched a restructuring support agreement (the "RSA"), with the initial consent of an ad hoc group of holders of certain Existing Notes (the "AHG"). Holders of approximately 80% of the aggregate outstanding principal amount of the Kaisa In-Scope Debt and Rui Jing In-Scope Debt (collectively, the "In-Scope Debts") ultimately acceded to the RSA, indicating their support for the respective Hong Kong Schemes, as further described below.

### B.    The Hong Kong Schemes

30.    The Debtors sought to restructure their and the Existing Subsidiary Obligors' liabilities under the In-Scope Debts through the Hong Kong Schemes. Specifically, pursuant to the Kaisa Hong Kong Scheme, Kaisa's obligations under the Kaisa In-Scope Debt to the creditors who held beneficial interests in the Kaisa In-Scope Debt and lenders or finance parties under relevant loan, facility or other agreements in respect of Kaisa In-Scope Debt (the "Kaisa Hong Kong Scheme Creditors") were to be released in return for the consideration provided under the Kaisa Hong Kong Scheme (the "Kaisa Scheme Consideration," as more fully described below). Pursuant to the Rui Jing Hong Kong Scheme, certain obligations of the Existing Subsidiary Obligors (including Rui Jing) under the Rui Jing In-Scope Debt to (a) creditors holding beneficial interests in such debt and (b) lenders or other finance parties under the relevant loan, facility, guarantee, or other agreements (collectively, the "Rui Jing Hong Kong Scheme Creditors," and together with the Kaisa Hong Kong Scheme Creditors, the "Scheme Creditors") were to be released in exchange for the consideration provided thereunder (the "Rui Jing Scheme Consideration," as more fully described below and, together with the Kaisa Scheme Consideration, the "Total Scheme

15

Consideration").[11]  The Total Scheme Consideration was to include rights and interests in the form of six tranches of senior notes (the "New Notes") and eight tranches of mandatory convertible bonds (the "MCBs," and together with the New Notes, the "New Instruments").

31.     The Hong Kong Schemes were parallel, linked, and interconditional with the Kaisa Cayman Scheme and the Rui Jing BVI Scheme, respectively (*see supra* fn. 1), such that they reflected the same economic restructuring of the same outstanding obligations and were proposed on substantially the same terms, albeit in different jurisdictions and approved under different statutes or ordinances.

vi.     Kaisa Scheme Releases

32.     The Kaisa Hong Kong Scheme released the applicable primary and guarantee obligations of Kaisa with respect to the Kaisa In-Scope Debt.  Specifically, upon delivery of the sealed[12] Hong Kong Sanction Orders to the Hong Kong Registrar, and subject to certain additional conditions, the Hong Kong Schemes became effective and thereby binding on all applicable Scheme Creditors (the "Schemes Effective Date").  The Schemes Effective Date occurred on April 7, 2025.

33.     Following the Schemes Effective Date, Kaisa and Rui Jing fulfilled various conditions precedent to the implementation of the Restructuring (the "Restructuring Conditions"), including obtaining all required approvals and/or consents in connection with the Restructuring.  Upon satisfaction of the Restructuring Conditions, Kaisa and Rui Jing confirmed in writing to the Scheme Creditors that the Restructuring Conditions had been satisfied (the date on which Kaisa

---

[11]   In connection with the releases provided for by the Hong Kong Schemes (collectively, the "Releases"), the Debtors, for and on behalf of the Scheme Creditors, executed applicable deeds of releases to terminate the respective rights and the pre-scheme obligations of persons affected by the Hong Kong Schemes.

[12]   References to "sealed" Hong Kong orders are equivalent to "file-stamped" orders in U.S. jurisprudence.

and Rui Jing provided such written confirmation, "Restructuring Effective Date"). The Restructuring Effective Date occurred on September 15, 2025. The Kaisa Released Claims[13] were released by the Kaisa Hong Kong Scheme Creditors against any Kaisa Released Person as of the Restructuring Effective Date.[14]

vii.    <u>Kaisa Scheme Consideration</u>

34.    On the Restructuring Effective Date, the Kaisa Hong Kong Scheme Creditors were entitled to Kaisa Scheme Consideration to be issued by Kaisa in the form of an allocation of the New Instruments, as follows (each Kaisa Hong Kong Scheme Creditor's allotted Kaisa Scheme Consideration was distributed 50% by way of the New Notes and 50% by way of the MCBs):

    a)    Kaisa Hong Kong Scheme Creditors could exchange their claims for the New Notes, which comprise six tranches with varying maturity dates and interest rates:

        1.    Tranche A: Principal amount of USD 158 million, maturing in 2027, with an interest rate of 5.00% in cash or 6.00% payment-in-kind (PIK);

        2.    Tranche B: Principal amount of USD 237 million, maturing in 2028, with an interest rate of 5.25% in cash or 6.25% PIK;

---

[13]  "<u>Kaisa Released Claims</u>" means (capitalized terms as defined in the Kaisa Hong Kong Scheme) any Kaisa Scheme Claim, Ancillary Claim or any past, present and/or future Claim against a Released Person under or arising out of, relating to or in respect of: (a) the Existing Finance Documents; (b) the preparation, negotiation, sanction or implementation of the Kaisa Schemes, the Restructuring Documents and/or the RSA; and/or (c) the execution of the Restructuring Documents and the carrying out of the steps and transactions contemplated in the Kaisa Hong Kong Scheme, the Kaisa Cayman Scheme and/or the Rui Jing Schemes in accordance with their terms, but in each of the foregoing cases excluding any and all Excluded Claims.

[14]  A "<u>Kaisa Released Person</u>" with respect to the Kaisa Hong Kong Scheme are (capitalized terms as defined in the Kaisa Hong Kong Scheme): (i) Kaisa; (ii) each member of the AHG and their respective Personnel and respective advisers, including the Ad Hoc Group's Advisors; (iii) the Existing Trustees, the Existing Paying and Transfer Agents and Registrars, the Existing Common Depositaries and the Existing Agents; (iv) the New Agents, the New Trustees and the New Common Depositary; (v) the Holding Period Trustee; (vi) the Information Agent; (vii) the Scheme Administrators; (viii) the Adjudicator; (ix) the foreign representative appointed in connection with the recognition proceeding under Chapter 15 of the US Bankruptcy Code; (x) the Blocked Scheme Creditor Tabulation Agent; and (xi) the Advisers; and, regarding each of the above other than Kaisa, includes each of their respective predecessors, successors and assigns (where applicable) and their respective Affiliates, their respective Personnel, and their respective advisers and in their capacities as such, and "Kaisa Released Person" shall be construed accordingly.

17

3.      Tranche C: Principal amount of USD 395 million, maturing in 2029, with an interest rate of 5.50% in cash or 6.50% PIK;

4.      Tranche D: Principal amount of USD 474 million, maturing in 2030, with an interest rate of 5.75% in cash or 6.75% PIK;

5.      Tranche E: Principal amount of USD 711 million, maturing in 2031, with an interest rate of 6.00% in cash or 7.00% PIK; or

6.      Tranche F: Principal amount determined based on the total amount of claims under the Kaisa Hong Kong Scheme, maturing in 2032, with an interest rate of 6.25% in cash or 7.25% PIK.

i.      In addition to the New Notes, Kaisa Hong Kong Scheme Creditors received MCBs convertible into the new Kaisa shares, which comprise eight tranches with varying maturity dates and conversion prices:

1.      Tranche A: Principal amount of USD 118 million, maturing in 2025, with a conversion price of HKD 4.75 per share;

2.      Tranche B: Principal amount of USD 158 million, maturing in 2026, with a conversion price of HKD 4.75 per share;

3.      Tranche C: Principal amount of USD 197 million, maturing in 2027, with a conversion price of HKD 4.75 per share;

4.      Tranche D: Principal amount of USD 316 million, maturing in 2028, with a conversion price of HKD 4.05 per share;

5.      Tranche E: Principal amount of USD 316 million, maturing in 2029, with a conversion price of HKD 4.05 per share;

6.      Tranche F: Principal amount of USD 395 million, maturing in 2030, with a conversion price of HKD 4.05 per share;

7.      Tranche G: Principal amount of USD 395 million, maturing in 2031, with a conversion price of HKD 4.05 per share; and

8.      Tranche H: Principal amount determined based on the total amount of claims under the Kaisa Hong Kong Scheme, maturing in 2032, with a conversion price of HKD 4.05 per share.

35.     Accordingly, and to the best of my knowledge and belief, on the Restructuring Effective Date, the Kaisa Scheme Consideration was credited to the accounts of all Kaisa Hong Kong Scheme Creditors (or their designated intermediaries) through the clearing systems,

18

Clearstream Banking S.A. and Euroclear Bank SA/NV, in accordance with the procedures set out in the Kaisa Hong Kong Schemes.

## STATUS AS FOREIGN REPRESENTATIVE AND IF FOREIGN PROCEEDINGS SATISFY BANKRUPTCY CODE PROVISIONS

**I.      Appointment as Foreign Representative and Filing of the Kaisa Chapter 15 Petition**

36.      I have been informed by Kaisa's legal advisors that a Chapter 15 proceeding is commenced by the filing of a petition for recognition (and related documents) by the "foreign representative." I was further informed that under section 1516(a) of the Bankruptcy Code, a bankruptcy court may presume that the person petitioning for Chapter 15 recognition is a foreign representative if the decision or certificate from the foreign court so indicates. I understand that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> . . . a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

37.      I have been authorized by the Board Resolution to act as Kaisa's agent (the "Foreign Representative") in seeking any relief available to a "foreign representative" under Chapter 15 of the Bankruptcy Code, including, among other things, to seek recognition of the Kaisa Hong Kong Scheme.

38.      In light of the statutory presumption embodied in section 1516(a) of the Bankruptcy Code noted above, the Bankruptcy Code's definition of "foreign representative," and the Board Resolution, I believe that I satisfy the requirements to serve as the Foreign Representative of the Kaisa Hong Kong Proceeding.

39.      Kaisa has property in the United States in the form of a retainer with Kaisa's U.S. counsel, Sidley Austin, which funds are held in a client trust account in New York, New York.

19

Moreover, Kaisa has submitted to New York jurisdiction under the Flourish Notes and nearly all of Existing Notes.  Therefore, on the date hereof, in my capacity as the Foreign Representative, I caused to be filed the Kaisa Chapter 15 Petition pursuant to sections 1504 and 1515 of the Bankruptcy Code commencing this Chapter 15 Case in the Southern District of New York, seeking recognition of the Kaisa Hong Kong Proceeding as a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code, or in the alternative as a "foreign nonmain proceeding," as such term is defined in section 1502(5) of the Bankruptcy Code, and seeking other necessary or appropriate relief in support of the Kaisa Hong Kong Proceeding.

40.     I believe that recognizing me as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code and recognition of the Kaisa Hong Kong Proceeding as a "foreign main proceeding" or in the alternative, as a foreign non-main proceeding, is consistent with the purpose of Chapter 15 and will allow Kaisa to restructure in the most efficient manner without jeopardizing the rights of creditors.

41.     I believe that Kaisa's Chapter 15 Case will enable Kaisa to achieve the objectives of the Kaisa Hong Kong Scheme by (i) ensuring that the parties in interest to the Restructuring, including Kaisa and the Kaisa Scheme Creditors, are treated in the United States consistent with the intentions of the Kaisa Hong Kong Scheme; and (ii) ensuring that the Restructuring is binding, valid, and enforceable in the United States.

**II.     The Kaisa Hong Kong Proceeding is a Foreign Main Proceeding**

42.     For the reasons set forth below, I believe that the Kaisa Hong Kong Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code.

43.     I am informed that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> [C]ollective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation . . . .

11 U.S.C. § 101(23).

44.    I believe that the Kaisa Hong Kong Proceeding falls within the foregoing definition.    As more fully explained in the Hong Kong Counsel Declaration filed contemporaneously herewith, the Kaisa Hong Kong Proceeding is (i) a collective judicial proceeding, (ii) in Hong Kong, and (iii) is governed by the Hong Kong statute applicable to schemes of arrangement, the Hong Kong Companies Ordinance (Chapter 622 of the Laws of Hong Kong).  In the Kaisa Hong Kong Proceeding, the Debtor's assets and affairs are subject to the control or supervision of the Hong Kong Court.  The purpose of the Kaisa Hong Kong Scheme and Kaisa Hong Kong Proceeding is to effectuate a restructuring of the Kaisa In-Scope Debt. Specifically, the Kaisa Scheme Creditors will release Kaisa from its obligations and liabilities under or in connection with the Kaisa In-Scope Debt and will receive their applicable share of the Kaisa Scheme Consideration.

45.    I am also informed that section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding is pending in the country where the debtor has "the center of its main interests" ("COMI").  I am informed that COMI is not defined in Chapter 15, but section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

46.    I believe that, while Kaisa's place of incorporation and location of its registered

21

office is the Cayman Islands, the COMI of the Debtor is Hong Kong.  Factors supporting COMI

in Hong Kong for the Debtor include:

i. **Limited Debtor Activity in the Cayman Islands**.  Notwithstanding that Kaisa is incorporated in the Cayman Islands, it does not conduct business in the Cayman Islands.  In fact, Kaisa is registered as an exempted company in the Cayman Islands and, pursuant to section 174 of the Cayman Companies Law, "[a]n exempted company shall not trade in the [Cayman] Islands with any person, firm or corporation except in furtherance of the business of the exempted company carried on outside the Islands."  Cayman Companies Law § 174.

ii. **Debtor Activities in Hong Kong**.  Kaisa's physical headquarters is located in Hong Kong, and it is registered in Hong Kong under Part 16 of the Hong Kong Companies Ordinance, as is required for all companies with an established place of business in Hong Kong.  Moreover, copies of Kaisa's certificate of incorporation, articles of association, and annual returns are kept on file with the Hong Kong Registrar.  Kaisa's stock is listed and has been listed since December 9, 2009, on the Main Board of the SEHK, which means that Kaisa is under the jurisdiction of the Hong Kong Securities and Futures Commission ("HKSFC").

Further, Kaisa's administrative and governance operations and activities occur in Hong Kong. Kaisa's annual general meetings ("AGMs") and extraordinary general meetings ("EGMs"), have historically been held in Hong Kong.  The most recent AGM was held in Hong Kong on June 25, 2024, and the most recent EGM was held in Hong Kong on December 18, 2024.  In addition, Kwok Ying Shing, who serves as Chairman of Kaisa's Board, as well as myself, as Kaisa's Foreign Representative, reside in Hong Kong, and I have had an active role in monitoring and coordinating Kaisa's affairs leading up to and during the Kaisa Hong Kong Proceedings and the commencement of these Chapter 15 Cases. Additionally, three other directors, in addition to Kwok Ying Shing, hold Hong Kong identification cards and are permanent residents of Hong Kong, and the company secretary is based in Hong Kong and resides there. Moreover, Kaisa's board meetings have historically and are currently held in Hong Kong.

Moreover, Kaisa's restructuring activities also occur in Hong Kong. In addition to myself, four other Hong Kong-located members of Kaisa's senior management have been leading the restructuring negotiations and holding meetings with the Kaisa Scheme Creditors and Kaisa's advisors in Hong Kong.  Kaisa's Board authorized the retentions of Kaisa's advisors, including the Debtors' Hong Kong Legal Advisor and Hong Kong Financial Advisor, and was involved in the solicitation, consent, and

22

negotiation of the various documents and agreements necessary for Kaisa's restructuring, including the RSA and the underlying scheme document for the Kaisa Hong Kong Scheme, which are governed by Hong Kong law.  Restructuring-related meetings and negotiations took place in Hong Kong, or virtually, with significant participation by Hong Kong parties.  Certain advisors of the AHG, including the AHG's Hong Kong Legal Advisor and Hong Kong Financial Advisor, are similarly based in Hong Kong. Furthermore, as explained in greater detail above, there is an outstanding winding-up petition filed against Kaisa in Hong Kong.

Kaisa's administrative activities occur in Hong Kong. Certain aspects of Kaisa's administration are contracted out to third-party service providers based in Hong Kong. Kaisa's principal bankers, Bank of China and ICBC, are located in Hong Kong, and the parties' banking services agreements are governed by Hong Kong law.  Additionally, iPR Ogilvy & Mather, which provides certain investor relations services to Kaisa, is located in Hong Kong, and that service agreement is also governed by Hong Kong law.  Kaisa's accounting activities also take place in Hong Kong, where Kaisa is a tax resident.  Kaisa's financial statements are prepared and audited in accordance with the Hong Kong Financial Reporting Standards and filed publicly with the SEHK.  ZSZH (HK) Fuson CPA Limited (formerly SFAI (Hong Kong) Limited), who serves as Kaisa's auditor, is located in Hong Kong, and the audit agreement between the parties is governed by Hong Kong law.  The aforementioned bankers and service providers are paid from Kaisa's Hong Kong bank accounts.

Finally, Kaisa maintains bank accounts in Hong Kong, and the majority of its assets are intercompany balances mainly advanced in Hong Kong and the majority of cash maintaining its Hong Kong operation and administration is kept in Hong Kong.  Moreover, Kaisa has certain directly held assets in Hong Kong, including shares in SEHK-listed Kaisa Health Group Holdings Limited ("Kaisa Health"). Furthermore, Kaisa's books and records are located in Hong Kong.

iii. **Expectation and Support of Creditors**.  Kaisa's presence and activities in Hong Kong are known to its creditors. The RSA, which is governed by Hong Kong law, specifically disclosed the possibility of commencing the Kaisa Hong Kong Scheme, and holders of over 79% of the aggregate outstanding principal of the Kaisa In-Scope Debt have acceded to the RSA, indicating their support for the Kaisa Hong Kong Scheme.  The underlying scheme document for the Kaisa Hong Kong Scheme is governed by Hong Kong law and specifically lists a Hong Kong address to be used as a mailing address, with Lee King Ping Gigi, who is based in Hong Kong and serves as Kaisa's vice president, listed as the point of contact.  Moreover, no Kaisa Scheme Creditor has raised issues about the propriety of Hong Kong as Kaisa's COMI, or regarding any actions of

23

management or Kaisa's Board in proffering a Hong Kong COMI. And, as explained above, certain legal proceedings, including the HK Winding-Up Proceedings, have been initiated by certain creditors against Kaisa in Hong Kong, demonstrating that creditors expect Kaisa to be subject to the Hong Kong Court's jurisdiction.

Moreover, Hong Kong law governs the RSA, which sets out the terms on which the parties thereto would assist in and facilitate the implementation of the Restructuring. Additionally, certain components of the Kaisa In-Scope Debt, including the DB Loan, TFI Loan, Brilliant Bridge Notes, Ye Chang Notes, and Shandong Hi-Speed Facility, are governed by Hong Kong law.

**III.     Alternatively, the Kaisa Hong Kong Proceeding is a Foreign Nonmain Proceeding**

47.     In the event that the Court concludes that Kaisa's COMI is not Hong Kong, I believe that this Court should recognize the Kaisa Hong Kong Proceeding as a "foreign nonmain proceeding." I am informed that a foreign nonmain proceeding takes place in a jurisdiction that is not the entity's center of main interests, but where it has an "establishment," as defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. §§ 1502(2), (5).

48.     As set forth above, Kaisa has certain directors and employees based in Hong Kong who currently focus on the restructuring of the Group's offshore debts and has advisors in Hong Kong who are involved in the Restructuring. Kaisa's shares are listed in Hong Kong on the Main Board of the HKEX, Kaisa files annual returns with the Hong Kong Companies Registry, and, on a stand-alone basis, its books and records are located in Hong Kong.

**IV.     Statement Pursuant to Section 1515 of the Bankruptcy Code**

49.     I am informed that section 1515 of the Bankruptcy Code provides, in pertinent part, as follows:

> (a)     A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

    (b)    A petition for recognition shall be accompanied by—

        (1)    a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

        (2)    a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

        (3)    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

    (c)    A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

11 U.S.C. § 1515.

50.    As noted above, the Board Resolution appointing me as Foreign Representative for this Chapter 15 Case and authorizing me to commence this Chapter 15 Case is attached hereto as **Exhibit A**.[15]

51.    Pursuant to section 1515(c) of the Bankruptcy Code, I am aware of the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code, and I believe that the Kaisa Hong Kong Proceeding is a "foreign proceeding" as defined therein.  I am aware of no other foreign proceedings with respect to Kaisa other than the Cayman Scheme.

[*Remainder of page intentionally left blank*]

---

[15]    Additionally, the Kaisa Originating Summonses and the Kaisa Hong Kong Convening Order are attached to the Hong Kong Counsel   Declaration in Exhibits A.1 and B.1, respectively.

25

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 10, 2026

/s/ *Tam Lai Ling*
Mr. Tam Lai Ling
Foreign Representative
Kaisa Group Holdings Ltd.