**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Kaisa Group Holdings Ltd., *et al.*,[1] | Case No. 26-[●] (JPM) |
| Debtors in Foreign Proceedings. | Joint Administration Requested |

**DECLARATION OF TAM LAI LING**
**IN SUPPORT OF THE MOTION FOR (I)**
**RECOGNITION OF FOREIGN MAIN PROCEEDINGS; (II)**
**RECOGNITION OF FOREIGN REPRESENTATIVE; AND (III)**
**RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY**
**CODE WITH RESPECT TO DEBTOR RUI JING INVESTMENT**
**COMPANY LIMITED AND THE MOTION PURSUANT TO FEDERAL RULES**
**OF BANKRUPTCY PROCEDURE 2002 AND 9007 REQUESTING ENTRY**
**OF AN ORDER (I) SCHEDULING THE RECOGNITION HEARING, AND**
**(II) APPROVING THE FORM AND MANNER OF SERVICE OF NOTICE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I, Mr. Tam Lai Ling, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

as follows:

1.      I am over the age of 18 and, if called upon, could testify to all matters set forth in

this declaration (this "Declaration").[2]  In accordance with the Board Resolution (as defined herein)

of Rui Jing Investment Company Limited ("Rui Jing" or the "Debtor"), I was appointed as the

authorized representative of Rui Jing.  Moreover, I serve as a senior advisor at Kaisa Group

Holdings Limited ("Kaisa"), which is the parent company of Rui Jing, and am responsible for

---

[1]     The Debtors in these above-captioned Chapter 15 proceedings (these "Chapter 15 Cases") are collectively: (i) Kaisa Group Holdings Ltd., incorporated in the Cayman Islands as an exempted company with limited liability with Hong Kong registration number 39433977; and (ii) Rui Jing Investment Company Limited, incorporated in the British Virgin Islands ("BVI") as a limited liability company with the company number 1420460.  The Debtors' mailing address is at 30/F, The Center, 99 Queen's Road Central, Central, Hong Kong.

[2]     Capitalized terms used but not defined have such meanings set forth elsewhere in this Declaration, the Recognition Motion (as defined herein), the Tam Lai Ling Kaisa Declaration (as defined herein), as applicable.

formulating investment and financing strategies for Kaisa.  Additionally, I previously served as vice chairman and executive director of Kaisa from March 2010 to December 2014.  Consistent with these roles, I have gained knowledge of Rui Jing's history, day-to-day operations, assets, financial condition, business affairs, and books and records. I was also personally involved in the formulation and implementation of the Rui Jing Hong Kong Scheme and the Restructuring (each as defined below).  All facts set forth in this Declaration are based upon (a) my personal knowledge; (b) my review of relevant documents and any and all documents prepared and/or filed in connection with the Rui Jing Hong Kong Proceeding and the above-captioned Chapter 15 cases (the "Chapter 15 Cases"); (c) information supplied to me by the officers, directors, employees, or professionals retained by Rui Jing; or (d) my experience and knowledge of Rui Jing's assets and financial condition.

2.      I am making this Declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      Rui Jing is the subject of a restructuring proceeding entitled *In the Matter of Rui Jing Investment Company Limited* (Case Number HCMP 1706/2024) (the "Rui Jing Hong Kong Proceeding") concerning a scheme of arrangement (the "Rui Jing Hong Kong Scheme") pursuant to sections 670, 671, 673, and 674 of the Hong Kong Companies Ordinance (Chapter 622 of the Laws of Hong Kong) (the "Hong Kong Companies Ordinance") before the Court of First Instance of the High Court of the Hong Kong Special Administrative Region of the People's Republic of China (the "Hong Kong Court").

4.      On September 27, 2024, Rui Jing's board of directors (the "Rui Jing Board") passed the Board Resolution (as defined herein) authorizing me to take certain actions as necessary

2

to act as Rui Jing's foreign representative in connection with the Chapter 15 Cases as they relate to Rui Jing.

5.        I submit this Declaration in support of the (a) Chapter 15 *Petition for Recognition of a Foreign Proceeding* with respect to Rui Jing (the "Rui Jing Chapter 15 Petition"); (b) *Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"); and (c) *Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 Requesting Entry of an Order (I) Scheduling the Recognition Hearing, and (II) Approving the Form and Manner of Service of Notice* (the "Scheduling Motion"), each filed contemporaneously herewith.[3]

6.        As further detailed herein, a series of events placed certain Chinese property developers, including the Group (as defined herein), under financial stress and created impediments to addressing certain payment maturities.  The relief requested of this Court and the financial restructuring effectuated through the Chapter 15 Cases, and the corresponding Rui Jing Hong Kong Proceeding, is a meaningful step towards right-sizing the Group's balance sheet and placing it in a position for long-term success to the benefit of the Group's employees, creditors, customers, vendors, and all of its stakeholders.

**BACKGROUND**

**I.        Rui Jing's Business Operations and Preexisting Capital Structure Prior to the Hong Kong Schemes**

---

[3] Reference is made to the *Declaration of Sidley Austin as Hong Kong Counsel to Kaisa and Rui Jing in Support of the Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code With Respect to Debtors Kaisa Group and Rui Jing Investment Company* (the "Hong Kong Counsel Declaration").

3

7.      Rui Jing[4] serves as a key offshore investment holding entity through which Kaisa indirectly holds a substantial part of the Group's offshore and onshore assets and operations through various intermediary holding entities.[5]

### A.    Events Leading to the Restructuring in 2025

8.      In 2016, Kaisa completed a scheme of arrangement in the Cayman Islands and Hong Kong to restructure its offshore debt (the "2016 Cayman Scheme" and the "2016 Hong Kong Scheme", and together, the "2016 Restructuring").  On July 14, 2016, this Court issued an order recognizing and enforcing the 2016 Hong Kong Scheme and the order of the Hong Kong court sanctioning the 2016 Hong Kong Scheme.[6]

9.      Following the 2016 Restructuring and until 2021, the Group's operations remained generally stable.  However, in the second half of 2021, Chinese property developers and Chinese capital markets entered a turning point that had an impact on the entire industry, including Kaisa. Both investment in real estate development and housing sales plummeted, and property developers frequently began to default on their debts.

10.     Macroeconomic pressures, including reduced bank lending for real estate development coupled with the adverse impact of the COVID-19 pandemic, resulted in a reduction of access by property developers to onshore capital and cash flow.  This also caused an adverse reaction in the offshore capital market.  Even after the worst effects of the COVID-19 pandemic subsided, the liquidity crisis faced by the industry continued to affect many developers in the PRC,

---

[4]    Rui Jing has been incorporated in the BVI under the BVI Business Companies Act, 2004 as a limited liability company since July 23, 2007.

[5]    Onshore assets and liabilities refer to those assets and liabilities located in the PRC and do not include assets and liabilities located in Hong Kong and other countries or regions are referred to as "offshore" assets and liabilities.

[6]    *See In re Kaisa Group Holdings Ltd.*, Case No. 16-11303 (SHL) (Bankr. S.D.N.Y. July 14, 2016).  For the avoidance of doubt, Kaisa did not seek recognition of the 2016 Cayman Scheme under Chapter 15 of the Bankruptcy Code.

including the Group, due to limited access to external capital to refinance existing indebtedness and reduced revenues from contracted sales. Consequently, Kaisa's real estate transaction volumes, the area sold, and the amount of sales declined, leading to reduced cash generation and liquidity pressures.

11.     Since 2021, the Group actively worked to manage its liquidity and maintain stability, including ensuring timely construction and delivery of new developments and projects, attempting to dispose of certain assets, accelerating sales and revenue collections, and reducing operational expenses. However, the Group's contracted sales figures and liquidity situation did not see sufficient improvements, and the Group found it more difficult to offload assets than originally anticipated.

### B.    Events of Default

12.     As a result of the significant pressure on cash flow and liquidity constraints described above, Kaisa was unable to pay outstanding interest and principal on certain of its Existing Notes (as defined and described more fully below). Kaisa's failure to pay the outstanding principal or interest with respect to certain Existing Notes triggered a cross-default of all the Existing Notes.

13.     In addition to the Existing Notes, there were events of default and cross-defaults in relation to the Group's and Kaisa's other offshore debts. Kaisa and certain other Group entities in Hong Kong, the Cayman Islands and the BVI received demand notices and statutory demands with respect to the defaulted debts. Certain creditors also sought to enforce their security relating to secured debts. As of June 30, 2024, an aggregate principal amount of approximately USD 12.27 billion of the Group's offshore debts was immediately due and payable, and an aggregate principal amount of approximately USD 11.91 billion of Kaisa's offshore debts (on a standalone basis) was immediately due and payable.

### C.    Legal Proceedings Commenced Against Kaisa and the Group

#### i.    <u>Proceedings in Hong Kong</u>

14.    In July 2023, the trustee of the Existing Notes presented a winding-up petition in the Hong Kong Court against Kaisa (HCCW 295 of 2023) (as amended, the "<u>HK Winding-Up Proceedings</u>") in respect of unpaid principal and interest amounts owed under the July 2023 Senior Notes (the "<u>Winding Up Petition</u>").[7]

#### ii.    <u>Proceedings in New York</u>

15.    In January 2023, Oasis, a beneficial holder of four series of Existing Notes with an aggregate principal amount of $90 million, brought suit against Kaisa and Chang Ye Investment Company Limited ("<u>Chang Ye</u>"), one of the Existing Subsidiary Obligors (as defined herein) under the Existing Notes.  Oasis's complaint was dismissed without prejudice in November 2023.  On April 9, 2024, Oasis filed a new complaint against Kaisa and Chang Ye related to the same four Existing Notes (the "<u>April 2024 Complaint</u>").  On May 31, 2024, Kaisa and Chang Ye filed a motion to dismiss the April 2024 Complaint in relation to three of the four tranches of Existing Notes, on the grounds that Oasis failed to obtain proper authorization to bring a claim as a beneficial holder of those Existing Notes.  On March 17, 2026, the New York Supreme Court denied Kaisa and Chang Ye's motion to dismiss the April 2024 Complaint and ordered the parties to exchange initial disclosures and conduct other discovery.  *Oasis Inv. II Master Fund Ltd. v. Chang Ye Inv. Co. Ltd. et al*, No. 651835/2024 (N.Y. Sup. Ct. Mar. 17, 2026) (ECF No. 28) (order denying motion to dismiss).

---

[7]    The Winding Up Petition was ultimately dismissed on September 22, 2025, following the successful implementation of the Schemes and the occurrence of the Restructuring Effective Date (as defined herein).

16.     I understand that the Oasis Litigation concerns claims arising from the Existing Notes, which constitute part of the In-Scope Debts that were compromised and discharged pursuant to the Hong Kong Schemes.  I further understand that the New York state court has directed the parties to proceed with initial disclosures and discovery.  In the absence of interim relief from this Court, Kaisa would be required to expend substantial resources responding to discovery and continuing merits litigation in New York before this Court can consider recognition and related relief.

17.     I understand that permitting the Oasis Litigation, or similar actions by other creditors, to proceed could interfere with the implementation of the Hong Kong Schemes and the Restructuring, including by allowing individual creditors to seek recoveries outside the framework of the Hong Kong Schemes and by depleting the resources of the restructured business to the detriment of the Restructuring.  I further understand that, if such an action were ultimately to proceed to judgment, the entry of a final judgment in excess of the applicable threshold of USD 20.0 million that remains unstayed or undischarged for the requisite period would constitute an "Event of Default" under the New Notes indentures, including pursuant to section 6.01(f) thereof, and that any resulting acceleration or payment default on other material indebtedness could independently trigger a cross-default under section 6.01(e) thereof.  I understand that the occurrence of any such Event of Default would give rise to acceleration and/or enforcement rights across the six tranches of New Notes and eight tranches of MCBs issued pursuant to the Hong Kong Schemes.  I further understand that these risks are particularly acute because the New Notes are governed by New York law and enforcement actions and remedies would be pursued in this jurisdiction.  For these reasons, I believe that provisional relief staying such actions in the United States, including the Oasis Litigation, is necessary to preserve the status quo and prevent

immediate and irreparable harm to the Restructuring pending this Court's determination of the Recognition Motion, and that recognition should give full force and effect in the United States to the compromise and discharge of claims under the Hong Kong Schemes.

### iii.   Proceedings in the PRC against Kaisa and the Group

18.   There have also been proceedings including litigation and arbitration in the PRC against Kaisa and the Group, relating to, among other things, (i) overdue payments in relation to loans and other financing arrangements, (ii) overdue payments in relation to construction projects and supplier payments, (iii) disputes in relation to properties sold by the Group, and (iv) joint development contractual disputes.  As of the date of this Motion, no counterparty has taken action in the aforementioned proceedings to enforce judgments and arbitration awards against Kaisa outside the PRC.

### D.   Rui Jing's Capital Structure Prior to the Restructuring in 2025

19.   This section provides an overview of the Debtors' capital structure prior to the holistic restructuring of their financial indebtedness (the "Restructuring") pursuant to the Hong Kong Proceedings and the implementation of the Hong Kong Schemes.

### i.   Rui Jing's Standalone Assets and Liabilities

20.   On a standalone basis, as of June 30, 2024, Rui Jing's total assets amounted to approximately USD 2.63 billion, and Rui Jing's total liabilities amounted to approximately USD 2.68 billion.  Rui Jing's liabilities as a guarantor with respect to the Group's financing arrangement were classified as contingent liabilities of USD 11.71 billion.

21.   Rui Jing's main assets consisted of intercompany receivables from various of its subsidiaries within the Group, totaling approximately USD 2.60 billion.  Aside from directly held

shares in its wholly-owned Hong Kong and BVI subsidiaries, and cash and bank balances of approximately USD 6,000, Rui Jing did not have any other directly held assets.

### ii.    Rui Jing's Financing Arrangements

22.    All of Rui Jing's financing arrangements prior to the Restructuring related to its guarantees granted under Kaisa's financial arrangements.  As of June 30, 2024, the total principal amount of Rui Jing's indebtedness arising from such financing arrangements (the "Rui Jing Total Existing Debt", and together with Kaisa Total Existing Debt, the "Total Existing Debts") was approximately USD 11.71 billion, including:

i.    Guarantees granted by Rui Jing and each of the Existing Subsidiary Obligors and share pledges granted by Rui Jing over certain Existing Subsidiary Obligors that Rui Jing directly holds, in relation to the sixteen series of Existing Notes, with a total principal outstanding of approximately USD 11.47 billion due on various dates and with various rates;

ii.    Guarantees granted by Rui Jing and each of the Existing Subsidiary Obligors in relation to the DB Loan, with a total principal amount of USD 24.68 million, with a rate of LIBOR + 7.5%; and

iii.    Guarantees granted by Rui Jing and each of the other Existing Subsidiary Obligors in relation to the TFI Loan, with a total principal amount of USD 215 million at 8.5%.[8]

23.    The Existing Notes were the only components of the Rui Jing Total Existing Debt governed by United States (*i.e.*, New York) law.

## II.    The Restructuring and Description of the Hong Kong Schemes and Issuance of New Instruments[9]

### A.    The RSA

---

[8]    Kaisa's guarantee obligation as a co-guarantor of the TFI Loan was released by the Kaisa Hong Kong Scheme. The primary obligation of the borrower, Joyful Richness Holdings Limited, which is a special purpose vehicle outside of the Group, was not released by the Kaisa Hong Kong Scheme.

[9]    In the case of any conflict between the summaries provided herein and the Hong Kong Schemes or the applicable indentures with respect thereto, the Hong Kong Schemes or the New Instrument Indentures, as applicable, will govern in all respects.

24.     Following thorough consideration, consultation, and negotiation, Kaisa and the Group determined that a holistic restructuring was in the best interests of Kaisa, Rui Jing, and those with an economic interest in the Debtors, in particular, the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors (both as defined herein).  Accordingly, Kaisa and Rui Jing publicly launched a restructuring support agreement (the "RSA"), with the initial consent of an ad hoc group of creditors of certain Existing Notes (the "AHG"). Holders of approximately 80% of the aggregate outstanding principal amount of the Kaisa In-Scope Debt and Rui Jing In-Scope Debt (collectively, the "In-Scope Debts") ultimately acceded to the RSA, indicating their support for the respective Hong Kong Schemes, as further described below.

### B.    The Hong Kong Schemes

25.     The Debtors sought to restructure their and the Existing Subsidiary Obligors' liabilities under the In-Scope Debts through the Hong Kong Schemes. Specifically, pursuant to the Kaisa Hong Kong Scheme, Kaisa's obligations under the Kaisa In-Scope Debt to the creditors who held beneficial interests in the Kaisa In-Scope Debt and lenders or finance parties under relevant loan, facility or other agreements in respect of Kaisa In-Scope Debt (the "Kaisa Hong Kong Scheme Creditors") were to be released in return for the consideration provided under the Kaisa Hong Kong Scheme (the "Kaisa Scheme Consideration," as more fully described below).  Pursuant to the Rui Jing Hong Kong Scheme, certain obligations of the Existing Subsidiary Obligors (including Rui Jing) under the Rui Jing In-Scope Debt to (a) creditors holding beneficial interests in such debt and (b) lenders or other finance parties under the relevant loan, facility, guarantee, or other agreements (collectively, the "Rui Jing Hong Kong Scheme Creditors," and together with the Kaisa Hong Kong Scheme Creditors, the "Scheme Creditors") were to be released in exchange for the consideration provided thereunder (the "Rui Jing Scheme Consideration," as more fully described below and, together with the Kaisa Scheme Consideration, the "Total Scheme

Consideration").[10]  The Total Scheme Consideration was to include rights and interests in the form of six tranches of senior notes (the "New Notes") and eight tranches of mandatory convertible bonds (the "MCBs", and together with the New Notes, the "New Instruments").

26.    The Hong Kong Schemes were parallel, linked, and interconditional with the Kaisa Cayman Scheme and the Rui Jing BVI Scheme, respectively (*see supra* fn. 1), such that they reflected the same economic restructuring of the same outstanding obligations and were proposed on substantially the same terms, albeit in different jurisdictions and approved under different statutes or ordinances.

i.    Rui Jing Scheme Releases and Consideration

27.    Similarly, the Rui Jing Hong Kong Scheme sought to discharge the Rui Jing In-Scope Debt, which encompassed all Rui Jing Total Existing Debt.

28.    Because both the Kaisa In-Scope Debt and the Rui Jing In-Scope Debt involved certain obligations under the Existing Notes, the DB Loan, and the TFI Loan, the Rui Jing Hong Kong Scheme Creditors were a subset of the Kaisa Hong Kong Scheme Creditors (those parties who are both Rui Jing Hong Kong Scheme Creditors and Kaisa Hong Kong Scheme Creditors, "Overlapping Scheme Creditors") and could participate in both the Kaisa Hong Kong Scheme and the Rui Jing Hong Kong Scheme.[11]  The Overlapping Scheme Creditors held approximately 95.5% of the Kaisa In-Scope Debt.  The remaining Kaisa Hong Kong Scheme Creditors ("Non-Overlapping Scheme Creditors") could not participate in the Rui Jing Hong Kong Scheme.

---

[10]    In connection with the releases provided for by the Hong Kong Schemes (collectively, the "Releases"), the Debtors, for and on behalf of the Scheme Creditors, executed applicable deeds of releases to terminate the respective rights and the pre-scheme obligations of persons affected by the Hong Kong Schemes.

[11]    Since the Overlapping Scheme Creditors had claims against both Kaisa and Existing Subsidiary Obligors, they received consideration from both the Rui Jing Hong Kong Scheme and the Kaisa Hong Kong Scheme to reflect the structural priority of their claims.

11

29. The Rui Jing Hong Kong Scheme offered the Rui Jing Scheme Consideration described above. Each Rui Jing Hong Kong Scheme Creditor's allotted Rui Jing Scheme Consideration was distributed 50% by way of the New Notes and 50% by way of the MCBs.

30. In exchange for the Rui Jing Scheme Consideration, the Rui Jing Released Claims[12] were released by the Rui Jing Scheme Hong Kong Creditors against any Rui Jing Released Person[13] on the Restructuring Effective Date.

## STATUS AS FOREIGN REPRESENTATIVE AND IF FOREIGN PROCEEDINGS SATISFY BANKRUPTCY CODE PROVISIONS

### I. Appointment as Foreign Representative and Filing of the Rui Jing Chapter 15 Petition

31. I have been informed by Rui Jing's legal advisors that a Chapter 15 proceeding is commenced by the filing of a petition for recognition (and related documents) by the "foreign representative." I was further informed that under section 1516(a) of the Bankruptcy Code, a bankruptcy court may presume that the person petitioning for Chapter 15 recognition is a foreign representative if the decision or certificate from the foreign court so indicates. I understand that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

---

[12] "Rui Jing Released Claims" means (capitalized terms as defined in the Rui Jing Hong Kong Scheme) any Rui Jing Scheme Claim, Ancillary Claim or any past, present and/or future Claim arising out of, relating to or in respect of: (a) the Existing Finance Documents relating to the Rui Jing In-Scope Debt; (b) the preparation, negotiation, sanction or implementation of the Rui Jing Schemes, the Kaisa Schemes, the Restructuring Documents and/or the RSA; and/or (c) the execution of the Restructuring Documents and the carrying out of the steps and transactions contemplated in the Rui Jing Schemes and the Kaisa Schemes in accordance with their terms, but in each of the foregoing cases excluding any and all Excluded Claims.

[13] A "Rui Jing Released Person" with respect to the Rui Jing Hong Kong Scheme are (capitalized terms as defined in the Rui Jing Hong Kong Scheme): (i) Rui Jing and each of the other Existing Subsidiary Obligors; (ii) each member of the Ad Hoc Group and its respective Personnel and its respective advisers, including the Ad Hoc Group's Advisors; (iii) the Existing Trustee, the Existing Paying and Transfer Agent and Registrar, the Existing Common Depositary and the Existing Agents; (iv) the New Agents, the New Trustees and the New Common Depositary; (v) the Holding Period Trustee; (vi) the Information Agent; (vii) the Scheme Administrators; (viii) the Adjudicator; (ix) the foreign representative appointed in connection with the Chapter 15 Filing; (x) the Blocked Scheme Creditor Tabulation Agent; and (xi) the Advisers; and, regarding each of the above other than Rui Jing and the other Existing Subsidiary Obligors, includes each of their respective predecessors, successors and assigns (where applicable) and their respective Affiliates, their respective Personnel, and their respective advisers and in their capacities as such, and "Rui Jing Released Persons" shall be construed accordingly.

> . . . a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

32. I have been authorized by the Board Resolution to act as Rui Jing's agent (the "Foreign Representative") in seeking any relief available to a "foreign representative" under Chapter 15 of the Bankruptcy Code, including, among other things, to seek recognition of the Rui Jing Hong Kong Scheme.

33. In light of the statutory presumption embodied in section 1516(a) of the Bankruptcy Code noted above, the Bankruptcy Code's definition of "foreign representative," and the Board Resolution, I believe that I satisfy the requirements to serve as the Foreign Representative of the Rui Jing Hong Kong Proceeding.

34. Rui Jing has property in the United States in the form of a retainer with Rui Jing's U.S. counsel, Sidley Austin LLP, which funds are held in a client trust account in New York, New York. Moreover, Rui Jing has submitted to New York jurisdiction under nearly all of the Existing Notes. Therefore, on the date hereof, in my capacity as the Foreign Representative, I caused to be filed the Rui Jing Chapter 15 Petition pursuant to sections 1504 and 1515 of the Bankruptcy Code commencing this Chapter 15 Case in the Southern District of New York, seeking recognition of the Rui Jing Hong Kong Proceeding as a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code, or in the alternative as a "foreign nonmain proceeding," as such term is defined in section 1502(5) of the Bankruptcy Code, and seeking other necessary or appropriate relief in support of the Rui Jing Hong Kong Proceeding.

35. I believe that recognizing me as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code and recognition of the Rui Jing Hong Kong Proceeding

as a "foreign main proceeding" or in the alternative as a foreign non-main proceeding is consistent with the purpose of Chapter 15 and will allow Rui Jing to restructure in the most efficient manner without jeopardizing creditors' rights.

36.     I believe that Rui Jing's Chapter 15 Case will enable Rui Jing to achieve the objectives of the Rui Jing Hong Kong Scheme by (i) ensuring that the parties in interest to the Restructuring, including Rui Jing and the Scheme Creditors, are treated in the United States consistent with the intentions of the Rui Jing Hong Kong Scheme; (ii) ensuring that the Restructuring is binding, valid, and enforceable in the United States; and (iii) minimizing the risk of litigation over any potential residual claims that might exist under the Rui Jing In-Scope Debt or ancillary documents related to the Rui Jing In-Scope Debts.

**II.     The Rui Jing Hong Kong Proceeding is a Foreign Main Proceeding**

37.     For the reasons set forth below, I believe that the Rui Jing Hong Kong Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code.

38.     I am informed that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> [C]ollective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation . . . .

11 U.S.C. § 101(23).

39.     I believe that the Rui Jing Hong Kong Proceeding falls within the foregoing definition.     As more fully explained in the Hong Kong Counsel Declaration filed contemporaneously herewith, the Rui Jing Hong Kong Proceeding is (i) a collective judicial proceeding, (ii) in Hong Kong, and (iii) is governed by the Hong Kong statute applicable to

14

schemes of arrangement, the Hong Kong Companies Ordinance (Chapter 622 of the Laws of Hong Kong). In the Rui Jing Hong Kong Proceeding, the Debtor's assets and affairs are subject to the control or supervision of the Hong Kong Court. The purpose of the Rui Jing Hong Kong Scheme and Rui Jing Hong Kong Proceeding is to effectuate a restructuring of the Rui Jing In-Scope Debt. Specifically, the Rui Jing Scheme Creditors will release Rui Jing and the applicable Existing Subsidiary Obligors from their respective obligations and liabilities under or in connection with the Rui Jing In-Scope Debt and will receive their applicable share of the Rui Jing Scheme Consideration.

40.    I am also informed that section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding is pending in the country where the debtor has "the center of its main interests" ("COMI"). I am informed that COMI is not defined in Chapter 15, but section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

41.    I believe that, while Rui Jing's place of incorporation and location of its registered office is the BVI, the COMI of the Debtor is Hong Kong. Factors supporting COMI in Hong Kong for the Debtor include:

(i)    **Limited Debtor Activity in the BVI**. Notwithstanding that Rui Jing is incorporated in the BVI, it does not conduct business in the BVI.

(ii)    **Debtor Activities in Hong Kong**. Rui Jing's physical headquarters is located in Hong Kong.

Rui Jing's administrative and governance activities occur in Hong Kong. Moreover, Lee King Ping Gigi, the director, is located in Hong Kong.

15

Rui Jing's accounting activities occur in Hong Kong, where Rui Jing's accounts are prepared in accordance with the HKFRS.  In addition, Rui Jing is a tax resident of Hong Kong and maintains bank accounts there.

Restructuring has been Rui Jing's primary business activity. Rui Jing's main assets consisted of intercompany receivables from various of its subsidiaries within the Group, totaling approximately USD 2.60 billion. Aside from directly held shares in its wholly-owned Hong Kong and BVI subsidiaries, and cash and bank balances of approximately USD 6,000, Rui Jing did not have any other directly held assets. Additionally, 30 out of 58 other Existing Subsidiary Obligors whose debts were adjusted under the Rui Jing Hong Kong Scheme are incorporated in Hong Kong. Rui Jing's management and restructuring activities are primarily conducted by its directors and employees based in Hong Kong.  Rui Jing's Board authorized the retentions of Rui Jing's restructuring advisors, including the Debtors' Hong Kong Legal Advisor and Hong Kong Financial Advisor, who, for the avoidance of doubt, are shared with Kaisa.  The majority of these advisors have Hong Kong offices, and their engagements on the Restructuring were led by Hong Kong situated personnel.  Rui Jing's Board also approved the terms of the Restructuring, including the RSA, which is governed by Hong Kong law. Moreover, Restructuring-related meetings and negotiations took place in Hong Kong, or virtually, with significant participation by Hong Kong parties. Furthermore, Rui Jing's Board has exercised certain powers necessary for the implementation of the Restructuring, including oversight of Rui Jing's development of the Rui Jing Hong Kong Scheme.

Rui Jing's accounting activities also take place in Hong Kong, where Rui Jing is a tax resident.  Rui Jing's accounts are prepared and in accordance with the Hong Kong Financial Reporting Standards. Furthermore, Rui Jing's books and records are located in Hong Kong.

(iii)   **Expectation and Support of Creditors**. Rui Jing's presence and activities in Hong Kong are known to its creditors through a variety of channels. The RSA, which is governed by Hong Kong law, specifically disclosed the possibility of commencing the Rui Jing Hong Kong Scheme, and holders of over 81% of the aggregate outstanding principal of the Rui Jing In-Scope Debt have acceded to the RSA, and agreed to vote in favor of the Rui Jing Hong Kong Scheme. The Rui Jing Consenting Creditors also agreed to submit to the exclusive jurisdiction of the Hong Kong Court.  Moreover, no Rui Jing Scheme Creditor has raised issues about the propriety of Hong Kong as Rui Jing's COMI, or regarding any actions of management or Rui Jing's Board in proffering a Hong Kong COMI.

Moreover, Hong Kong law governs the RSA, which sets out the terms on which the parties thereto would assist in and facilitate the implementation of the Restructuring. The RSA also lists a Hong Kong address to be used as a mailing address, with Lee King Ping Gigi, one of two directors for Rui

Jing, who is based in Hong Kong, listed as the point of contact. Additionally, certain components of the Rui Jing In-Scope Debt, including the DB Loan and TFI Loan, are governed by Hong Kong law.

**III.     Alternatively, the Rui Jing Hong Kong Proceeding is a Foreign Nonmain Proceeding**

42.     In the event that the Court concludes that Rui Jing's COMI is not Hong Kong, I believe that this Court should recognize the Rui Jing Hong Kong Proceeding as a "foreign nonmain proceeding." I am informed that a foreign nonmain proceeding takes place in a jurisdiction that is not the entity's center of main interests, but where it has an "establishment," as defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. §§ 1502(2), (5).

43.     As set forth above, Rui Jing has certain directors and employees based in Hong Kong who currently focus on the restructuring of Rui Jing's offshore debts and has advisors in Hong Kong who are involved in the restructuring. And, on a stand-alone basis, its books and records are located in Hong Kong.

**IV.     Statement Pursuant to Section 1515 of the Bankruptcy Code**

44.     I am informed that section 1515 of the Bankruptcy Code provides, in pertinent part, as follows:

(a)     A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

(b)     A petition for recognition shall be accompanied by—

(1)     a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2)     a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

> (3)    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

> (c)    A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

11 U.S.C. § 1515.

45.    As noted above, the Board Resolution appointing me as Foreign Representative for this Chapter 15 Case and authorizing me to commence this Chapter 15 Case is attached hereto as **Exhibit A**.[14]

46.    Pursuant to section 1515(c) of the Bankruptcy Code, I am aware of the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code, and I believe that the Rui Jing Hong Kong Proceeding is a "foreign proceeding" as defined therein.  I am aware of no other foreign proceedings with respect to Rui Jing other than the BVI Scheme.

[*Remainder of page intentionally left blank*]

---

[14]    Additionally, the Rui Jing Originating Summonses and the Rui Jing Convening Order are attached to the Hong Kong Counsel Declaration in Exhibits A.2 and B.2, respectively.

18

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 10, 2026

/s/ *Tam Lai Ling*
Mr. Tam Lai Ling
Foreign Representative
Rui Jing Investment Company Limited