**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Kaisa Group Holdings Ltd., *et al*.,[1] | Case No. 26-[●] (JPM) |
| Debtors in Foreign Proceedings. | Joint Administration Requested |

**DECLARATION OF ANG CHEE KHIAN DESMOND
AS HONG KONG COUNSEL TO KAISA AND RUI JING
IN SUPPORT OF THE MOTION FOR (I) RECOGNITION
OF FOREIGN MAIN PROCEEDINGS; (II) RECOGNITION
OF FOREIGN REPRESENTATIVE; AND (III) RELATED
RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I, Ang Chee Khian Desmond, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

**INTRODUCTION**

1.     I am a solicitor admitted to practice in the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong") and a partner in the Commercial Litigation and Disputes practice of the law firm Sidley Austin located at 39 Floor, Two International Finance Centre, 8 Finance St, Central, Hong Kong ("Sidley"). If called upon, I could testify to all matters set forth in this declaration (this "Declaration").[2]

2.     Sidley acted, and is acting, as Hong Kong counsel to:

    a.  Kaisa Group Holdings Ltd. ("Kaisa"), incorporated in the Cayman Islands as an exempted company with limited liability

---

[1]   The Debtors in these above-captioned Chapter 15 proceedings (these "Chapter 15 Cases") are collectively: (i) Kaisa Group Holdings Ltd.; and (ii) Rui Jing Investment Company Limited.

[2]   Capitalized terms used in this Declaration but not defined are given their meaning in the Recognition Motion (as defined herein). Reference is also made to the Representative Declarations (as defined herein).

1

with the registration number 192502; and

b. Rui Jing Investment Company Limited ("Rui Jing", and together with Kaisa, the "Debtors" and each a "Debtor"), incorporated in the British Virgin Islands ("BVI") as a limited liability company with the company number 1420460. Rui Jing is a directly held wholly-owned subsidiary of Kaisa.

3. In preparing this Declaration, I reviewed, *inter alia*, the final form drafts of the following documents:

a. *Chapter 15 Petition for Recognition of a Foreign Proceeding for each of Kaisa and Rui Jing* (together, the "Chapter 15 Petitions");

b. *Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion");

c. *Declaration of Tam Lai Ling in Support of the Motion for (I) Recognition of Foreign Main Proceedings; (II) Recognition of Foreign Representative; and (III) Related Relief under Chapter 15 of the Bankruptcy Code with Respect to Kaisa* and *Declaration of Tam Lai Ling in Support of the Motion for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code with Respect to Rui Jing* (together, the "Representative Declarations");

d. *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion");

e. *Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 Requesting Entry of an Order (I) Scheduling the Recognition Hearing and (II) Approving Form and Manner of Service of Notice* (the "Scheduling Motion");

4. In addition, I have reviewed, *inter alia*, the following documents relevant to the Hong Kong Proceedings (as defined herein):

a. copies of the documents issued by the Debtors in connection with the Hong Kong Proceedings, including, *inter alia*, the: (i) Hong Kong Originating Summonses, (ii) Hong Kong Schemes Convening Orders, (iii) Notices of Hong Kong Schemes'

2

Scheme Meetings, (iv) Explanatory Statements, (v) Hong Kong Schemes, (vi) Notice of Results of the Scheme Meetings, (vii) Hong Kong Schemes Petitions, and (viii) Hong Kong Schemes Sanction Orders (each as defined and described herein); and

b. the relevant provisions of the Hong Kong Companies Ordinance (Chapter 622 of the Laws of Hong Kong) (the "Companies Ordinance") as they relate to this Declaration, extracts of which are attached hereto as **Exhibit H**.

5.      I submit this Declaration in support of: (a) the Chapter 15 Petitions; (b) the Recognition Motion; (c) the Provisional Relief Motion; and (d) the Scheduling Motion, each of which is filed contemporaneously herewith.

6.      Kaisa is an investment holding company of a group of companies comprising Kaisa and its directly and indirectly held subsidiaries, including Rui Jing (collectively, the "Group"). Kaisa's subsidiaries are located across various jurisdictions, including the Cayman Islands, the BVI, the People's Republic of China ("PRC"), and Hong Kong. The Group is principally engaged in property development, property investment, property management, hotel and catering operations, cultural center operations, and healthcare operations in the mainland of the PRC.

7.      In 2025, the Debtors implemented a debt restructuring exercise by way of court-approved schemes of arrangement (the "Hong Kong Proceedings") before the Court of First Instance of the High Court of Hong Kong (the "Hong Kong Court"). An overview of the Hong Kong Proceedings is as follows:

a. Kaisa implemented a scheme of arrangement between Kaisa and certain of its creditors (the "Kaisa Hong Kong Scheme Creditors") in case number HCMP 1705 of 2024 (the "Kaisa Hong Kong Scheme"). The order sanctioning the Kaisa Hong Kong Scheme (the "Kaisa Hong Kong Sanction Order") was granted by the Hong Kong Court on March 24, 2025 and the Reasons for Judgment was handed down on June 24, 2025 in *In the Matter of Kaisa Group Holdings*

3

*Ltd.* [2025] HKCFI 2699.

b. Rui Jing implemented a scheme of arrangement between Rui Jing and certain of its creditors (the "Rui Jing Hong Kong Scheme Creditors") in case number HCMP 1706 of 2024 (the "Rui Jing Hong Kong Scheme", together with the Kaisa Hong Kong Scheme, the "Hong Kong Schemes"). The Hong Kong Schemes were heard and decided by the Hong Kong Court together. The order sanctioning the Rui Jing Hong Kong Scheme (the "Rui Jing Hong Kong Sanction Order") was granted by the Hong Kong Court on March 24, 2025. The Hong Kong Court's *Reasons for Judgment* for the Rui Jing Hong Kong Scheme was consolidated with the *Reasons for Judgment* for the Kaisa Hong Kong Scheme in *In the Matter of Rui Jing Investment Company Limited* [2025] HKCFI 2699.

8.      The facts and matters contained in this Declaration are true and correct to the best of my information, knowledge, and belief. This Declaration comprises matters that are statements of my view of Hong Kong law or statements of fact.  Where the matters stated in this Declaration are statements regarding Hong Kong law, such statements represent my view of Hong Kong law as a solicitor admitted and authorized to practice in Hong Kong. Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, I believe them to be true. Where the matters stated in this Declaration are statements of fact that are not within my personal knowledge, they are derived, as appropriate, from documents maintained by the Registrar of Companies of the Hong Kong Companies Registry (the "Hong Kong Registrar"), from the records maintained by Sidley as a result of advising the Debtors in connection with the Hong Kong Schemes, and/or from information supplied to me by or on behalf of the Debtors and are true to the best of my knowledge, information, and belief. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

### **PERSONAL BACKGROUND AND QUALIFICATIONS**

9.      I am over the age of 18. I obtained a Bachelor of Laws degree from the National University of Singapore (Dean's List) in 2004. I am qualified to practice law in Hong Kong (as

4

solicitor), Singapore (as advocate and solicitor), and in England and Wales (as solicitor). I joined Sidley in 2016.

10.     Since 2023, I, together with other partners and associates at Sidley, have been advising the Debtors on various legal aspects of the Debtors' debt restructuring exercise, the conduct of the Hong Kong Proceedings, implementation of the Hong Kong Schemes, and the extraterritorial effects and recognition of the same.

11.     Although I am not admitted in the United States, I am generally familiar with recognition proceedings arising under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code") as a consequence of Sidley's and Sidley Austin LLP's involvement with other cross-border schemes of arrangement involving companies that have sought recognition under Chapter 15 of the Bankruptcy Code.

## STATEMENTS OF HONG KONG LAW AND PRACTICE

### I.     Hong Kong Legal System

12.     From July 1, 1997, the Hong Kong Court of Final Appeal became the highest appellate court in Hong Kong (except for certain matters which can be referred to the Standing Committee of the National People's Congress of the People's Republic of China, but which are not relevant to these Chapter 15 Cases). This was in place of the Privy Council of the United Kingdom, which was the highest appellate court for Hong Kong prior to PRC's resumption of exercise of sovereignty over Hong Kong on July 1, 1997. Decisions of the Privy Council on Hong Kong appeals before July 1, 1997 remain binding in Hong Kong whereas other decisions of the Privy Council or the Supreme Court of the United Kingdom (formerly, the Appellate Committee of the House of Lords) are of persuasive authority only.

13.     The legislative regimes applicable to schemes of arrangement in Hong Kong and

5

England and Wales are similar in nature. Notably, Part 13, Division 2 of the Companies Ordinance is analogous to Part 26 of the Companies Act 2006 of England and Wales. The primary difference is that section 674 of the Companies Ordinance has different provisions for voting majorities in the context of a takeover offer. These provisions are not relevant to the Hong Kong Proceedings.

14.    To the extent Hong Kong case law exists in relation to schemes of arrangement, the courts of Hong Kong will be bound by such case law. To the extent there are gaps in Hong Kong case law, the courts of Hong Kong may be guided by (but are not bound by) English case law as persuasive authority due to the similarities between the two legal regimes and the nature and treatment of English jurisprudence in Hong Kong. Article 84 of the Basic Law of Hong Kong, which is a constitutional document of Hong Kong, also prescribes that the courts of Hong Kong may refer to precedents of other common law jurisdictions.

## II.    Overview of Hong Kong Law Applicable to the Hong Kong Schemes

15.    The Debtors implemented the Hong Kong Schemes to restructure their financial indebtedness by way of a scheme of arrangement process under the Companies Ordinance.

16.    A scheme of arrangement or scheme (for the purposes of this Declaration) is a court-supervised compromise or arrangement between a company (on the one hand) and its members or its creditors (on the other hand). The process enables companies and their creditors in certain instances to obtain court approval to effect restructuring measures without having to obtain approval from 100 percent of the creditors whose rights are to be affected by the scheme. The company putting forward the scheme is commonly referred to as the "scheme applicant" or "scheme company."[3]

---

[3]    In the Hong Kong Proceedings, each of the Debtors is the "scheme applicant" in its corresponding case.

17.     In accordance with the Companies Ordinance, a scheme, including the Hong Kong Schemes, typically has three stages: (a) a first hearing before the Hong Kong Court commonly referred to as the "convening hearing"; (b) a meeting of one class, or meetings of several classes if there are more than one class, of scheme creditors to vote on the scheme proposed by the scheme applicant, referred to as a "scheme meeting(s)"; and (c) a second hearing before the Hong Kong Court to sanction the scheme approved by the scheme creditors at the scheme meeting(s), commonly referred to as the "sanction hearing". A high-level summary of each of these steps is set out below.

A.     The Convening Hearing

18.     First, the scheme company applies to the Hong Kong Court for leave to convene the scheme meeting, which is determined during the convening hearing. An application for a convening hearing is made by way of filing an *ex parte* originating summons. The scheme applicant is required to file evidence for the convening hearing by way of affidavit evidence, including drafts of the scheme, drafts of an explanatory statement explaining the terms of the scheme, and the draft notice of the scheme meeting (collectively, the "Scheme Documents").

19.     At the convening hearing, the Hong Kong Court's role is mainly to give directions for the conduct of the scheme meeting and the method of dispatch of the Scheme Documents prior to the scheme meeting. The purpose of the convening hearing is to ensure scheme creditors are given sufficient time and information about the scheme to vote at the scheme meeting. Additionally, at the convening hearing, the Hong Kong Court will appoint one person or more persons to chair the scheme meeting (the "Scheme Chairperson").

20.     The convening hearing is held in open court.  Any scheme creditor is entitled to be heard at the convening hearing and present arguments as to why the Hong Kong Court should

not approve the scheme.

B.    The Scheme Meeting

21.    Second, the scheme company convenes the scheme meeting in accordance with the orders of the court granted at the convening hearing.

22.    Scheme creditors are grouped together in one or more classes. A separate scheme meeting is held for each class. Whether scheme creditors should form one or more classes depends on an assessment of the scheme creditors' rights against the scheme company before and after the scheme. Scheme creditors whose rights are sufficiently similar that they can consult together with a view to their common interest may be summoned to a single meeting to vote in one class.[4]

23.    The scheme must be approved by a majority in number (50% plus 1), representing at least 75% in value, of the debt held by the scheme creditors voting at each scheme meeting convened to approve the scheme (the "Requisite Statutory Majorities").[5] The Requisite Statutory Majorities must be obtained in *each* class for the scheme to be approved. Scheme creditors are entitled to attend the scheme meeting in person, by authorized representative (if a corporate entity), or by proxy, and may ask the Scheme Chairperson questions regarding the proposed scheme.

C.    The Sanction Hearing

24.    Provided the scheme is approved by the Requisite Statutory Majorities at the scheme meeting, there will be a second hearing, namely, the sanction hearing. Application for a sanction hearing is made by filing a petition. While the originating summons for the convening hearing and the petition for the sanction hearing are two distinct applications and proceedings,

---

[4]    *UDL Argos Engineering & Heavy Industries Co Ltd & Ors v Li Oi Lin & Ors* [2001] 3 HKLRD 634 at [27(2)].

[5]    Companies Ordinance Section 674(1)(b).

8

the matters are assigned the same case number for each scheme applicant. The scheme applicant is required to file affidavit evidence to show that it followed the directions in the order from the convening hearing in relation to, *inter alia*, providing adequate notice of the scheme meeting and the dispatch of the Scheme Documents to the scheme creditors to allow them to vote.

25.     The purpose of the sanction hearing is for the Hong Kong Court to sanction the scheme. The date of the sanction hearing is provided to all scheme creditors in the relevant notices, Scheme Documents and other announcements issued by the scheme applicant. At the sanction hearing, the scheme company must demonstrate, in addition to the issues it has addressed at the convening hearing, that:[6]

   a.  the scheme is for a permissible purpose;

   b.  whether creditors who were called on to vote as a single class had sufficiently similar legal rights such that they could consult together with a view to their common interest at single meeting;

   c.  whether the meeting was duly convened in accordance with the Court's directions;

   d.  whether creditors have been given sufficient information about the scheme so as to enable them to make an informed decision whether or not to support it;

   e.  whether the necessary statutory majorities have been obtained, i.e., the Requisite Statutory Majorities;

   f.  whether the Court is satisfied in the exercise of its discretion that an intelligent and honest man acting in accordance with his interests as a member of the class within which he voted might reasonably approve the scheme; and

   g.  in an international case, whether there is sufficient connection between the scheme and Hong Kong and whether the scheme is effective in other relevant jurisdictions.

---

[6]    *Re China Bozza Development Holdings Ltd* [2023] HKCFI 1620 at [12].

26.     The sanction hearing is held in open court. Any scheme creditor is entitled to be heard at the sanction hearing and present arguments as to why the Hong Kong Court should not approve the scheme. However, an objection based solely on the grounds that the scheme is commercially a "bad deal" is unlikely to succeed if the scheme has the support of the Requisite Statutory Majorities.

27.     If the Hong Kong Court decides to sanction or approve the applicable scheme, the court will grant the sanction order. Once the Hong Kong Court grants the sanction order, the scheme applicant must ensure that such order is registered with the Hong Kong Registrar. Under Hong Kong law and pursuant to the Companies Ordinance, the scheme will become effective upon its terms on registration with the Hong Kong Registrar. Once registered with the Hong Kong Registrar, the scheme will bind all scheme creditors.[7]

D.     Role of the Hong Kong Court

28.     The Hong Kong Court's role when deciding whether or not to convene a scheme meeting or sanction a scheme is not to assess the commercial benefits of the proposal. Once the Requisite Statutory Majorities are achieved at the scheme meeting, the Hong Kong Court will usually consider the scheme creditors to be the best judge of their own commercial interests. Nevertheless, the Hong Kong Court is not simply a "rubber stamp," and instead plays an active role in the scheme process, retaining discretion as to whether or not to sanction the scheme:[8]

> "[…]The Court has an unfettered discretion as to whether or not to sanction a scheme. Case-law has developed principles which guide the Court in considering whether to sanction a scheme. What is clear is that the Court does not act as a rubber stamp and must reach its own independent view. But in doing so, if the scheme sanction principles are satisfied, the Court would be slow to differ from the

---

[7]   Companies Ordinance Section 673(6).

[8]   *Re Da Yu Financial Holdings Limited (formerly known as China Agrotech Holdings Limited) (in liquidation)* [2019] HKCFI 2531 at [19].

views of the majority scheme creditors on matters such as what an intelligent, honest person might reasonably think. The Court regards the scheme creditors as the best judges of their own commercial interests".

29.     In considering whether or not it should exercise such discretion, the Hong Kong Court will apply the principles set out below:[9]

"In considering whether to sanction a scheme, the Court applies some well-established principles which were recently restated in *Re China Singyes Solar Technologies Holdings Ltd* [2020] HKCFI 467; [2020] HKCLC 379 at [7] such that the Court would consider in particular the following: (1) whether the scheme is for a permissible purpose; (2) whether creditors who were called on to vote as a single class had sufficiently similar legal rights such that they could consult together with a view to their common interest at a single meeting; (3) whether the meeting was duly convened in accordance with the Court's directions; (4) whether creditors have been given sufficient information about the scheme to enable them to make an informed decision on whether or not to support it; (5) whether the necessary statutory majorities have been obtained; (6) whether the Court is satisfied in the exercise of its discretion that an intelligent and honest man acting in accordance with his interests as a member of the class within which he voted might reasonably approve the scheme; and (7) in an international case, whether there is sufficient connection between the scheme and Hong Kong, and whether the scheme is effective in other relevant jurisdictions".

30.     Accordingly, the Hong Kong Court will be concerned to ensure the proceeding has been conducted in a manner that satisfies the requirements set out in paragraphs 25 and 29 above.  For example, the Hong Kong Court will have to be satisfied that all necessary disclosures have been made to the scheme creditors in the Scheme Documents dispatched to the scheme creditors, that all notices were sent according to the directions from the convening hearing, the scheme meetings were held in accordance with the directions from the convening hearing, and the Requisite Statutory Majorities were obtained. The Hong Kong Court may hear arguments

---

[9]    *Re China Bozza Development Holdings Ltd* [2023] HKCFI 1620 at [12].

from the scheme creditors whose rights would be affected by the scheme.

### E.   Effect of a Scheme if Sanctioned

31.   Any scheme creditor who objects to the scheme may appear at either the convening hearing or sanction hearing before the Hong Kong Court to present its position. Scheme creditors may also make written submissions in advance of the convening hearing or sanction hearing. Therefore, scheme creditors attending these proceedings will have a full and fair opportunity to vote on, and be heard in connection with, the scheme.

32.   A scheme is a collective proceeding. The effect of a scheme is that if the Requisite Statutory Majorities are obtained and the Hong Kong Court approves the scheme, the terms of the scheme become binding on all members of the relevant class or classes of scheme creditors as a matter of Hong Kong law, whether or not a scheme creditor: (a) attended the scheme meeting, (b) voted for or against the scheme, (c) did not vote at all, or (d) changed its mind afterwards.

33.   The various steps taken by the Debtors in the Hong Kong Proceedings under *inter alia* sections 670, 671, 673 and 674 of the Companies Ordinance leading up to the sanction of the Hong Kong Schemes are described in the final section of this Declaration.

### THE HONG KONG SCHEMES

34.   I respectfully refer the Court to the Recognition Motion and the Representative Declarations, filed contemporaneously herewith, for a description of the history and business of each Debtor, and the events leading up to the sanctioning of the Hong Kong Schemes.

### THE HONG KONG PROCEEDINGS

A.  The Hong Kong Convening Hearings

35.   On December 10, 2024, each of the Debtors filed *ex parte* originating summonses with the Hong Kong Court (the "Hong Kong Originating Summonses"), copies of which are

12

attached hereto as **Exhibit A.1** (with respect to Kaisa) and **Exhibit A.2** (with respect to Rui Jing). The Hong Kong Originating Summonses were filed for the purpose of seeking convening hearings for each of the Debtors (the "Hong Kong Convening Hearings"). The Hong Kong Originating Summonses sought, *inter alia*, orders directing each of the Debtors to convene a scheme meeting of a single class for each of the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors in relation to the Hong Kong Schemes (together, the "Hong Kong Scheme Meetings").

36.      The Hong Kong Convening Hearings for the Hong Kong Schemes were jointly heard on December 19, 2024. The Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors were entitled to instruct legal representatives to attend, and make submissions during, the Hong Kong Convening Hearings. The Hong Kong Court granted convening orders with respect to each of the Hong Kong Originating Summonses, each dated December 19, 2024 ("Hong Kong Schemes Convening Orders"), which are on the same terms (save for the names of the Debtors) and copies of which are attached hereto as **Exhibit B.1** (with respect to Kaisa) and **Exhibit B.2** (with respect to Rui Jing).

37.      The Hong Kong Court authorized and appointed Mr. Chow Wai Shing Daniel, or failing him, Mr. Kenneth Fung, both of FTI Consulting (Hong Kong) Limited, as the Scheme Chairperson of the Hong Kong Scheme Meetings.

   B.   The Notices of Hong Kong Schemes' Scheme Meetings, Explanatory Statements and Hong Kong Scheme Meetings

38.      In accordance with the Hong Kong Schemes Convening Orders and section 671 of the Companies Ordinance, on February 7, 2025, being 21 days before the Hong Kong Scheme Meetings on February 28, 2025, the Debtors each issued: (i) notices of the Hong Kong Scheme Meetings (the "Notices of Hong Kong Schemes' Scheme Meetings"), and (ii) explanatory

statements appending the Hong Kong Schemes and the voting forms with voting instructions for the Hong Kong Scheme Meetings (the "Explanatory Statements"). Copies of the Debtors' Notices of Hong Kong Schemes' Scheme Meetings are attached hereto as **Exhibit C.1** (with respect to Kaisa) and **Exhibit C.2** (with respect to Rui Jing).

39.     As a matter of Hong Kong law and under the Companies Ordinance, the Explanatory Statements must include all information reasonably necessary to allow the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors to make an informed decision on the Hong Kong Schemes.[10] The Explanatory Statements included, *inter alia*, corporate information regarding Kaisa and Rui Jing, their respective financial position, the proposals for the each of the Hong Kong Schemes, the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors that are affected by the Hong Kong Schemes, the constitution of the creditor class or classes, details and administrative matters for the Hong Kong Scheme Meetings, voting, guidance on how Scheme Creditors could vote at the Hong Kong Scheme Meetings and collect consideration to be issued under the Hong Kong Schemes, and reminders to the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors that they could instruct legal representatives to appear before the Hong Kong Court to oppose the Hong Kong Schemes.  I understand and have been advised by the Debtors' U.S. counsel, Sidley Austin LLP, that an explanatory statement is comparable to the disclosure statement required under section 1125 of the Bankruptcy Code for solicitation of votes on a Chapter 11 plan.

40.     The Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors received the Notices of Hong Kong Schemes' Scheme Meetings via the following

---

[10]   Companies Ordinance Section 671(1)(a).

means:

   a. on the following website maintained by Kroll Issuer Services Limited, in its capacity as the Debtors' information agent for the Hong Kong Schemes ("Kroll"): https://deals.is.kroll.com/kaisa (the "Transaction Website");

   b. on Kaisa's corporate website: http://www.kaisagroup.com;

   c. through the Euroclear Bank SA/NV and/or Clearstream Banking S.A. clearing systems (the "Clearing Systems");[11]

   d. by way of public announcements from Kaisa on the HKEXnews website of The Stock Exchange of Hong Kong Limited: http://www.hkexnews.hk ("HKEXnews Website"); and

   e. by instructing Kroll to send the notice via electronic mail to each Scheme Creditor for whom the Debtors or Kroll had contact information.

41.     The Notices of Hong Kong Schemes' Scheme Meetings contained a link to a portal on the Transaction Website where the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors could download the Explanatory Statements.

42.     The Hong Kong Scheme Meetings were duly held on February 28, 2025. Separate meetings were held in respect of each of the Kaisa Hong Kong Scheme and the Rui Jing Hong Kong Scheme, and in each case, a single class of Scheme Creditors was constituted and represented at the relevant meeting. At each of the Hong Kong Scheme Meetings, a vote was held to determine whether the Scheme Creditors that were present and voting in person or by proxy approved the respective Hong Kong Schemes by the Requisite Statutory Majorities:

43.     The Kaisa Hong Kong Scheme Creditors present and voting on the Kaisa Hong

---

[11] For publicly traded notes and securities, the ultimate beneficial noteholder purchases book entry interests in an issued global note. Trading and communication in such book entry interests are maintained by clearing systems, being Euroclear Bank SA/NV and Clearstream Banking S.A. Such clearing systems disseminate information to ultimate beneficial holders (or their intermediaries) and they constitute the main method for issuers to ensure notices and other communication reach ultimate beneficial owners.

15

Kong Scheme approved such scheme by the Requisite Statutory Majorities, with 98.03% in number representing approximately 97.14% in value voting in favor of the Kaisa Hong Kong Scheme.

44.     The Rui Jing Hong Kong Scheme Creditors present and voting on the Rui Jing Hong Kong Scheme approved such scheme by the Requisite Statutory Majorities, with 98.11% in number representing approximately 97.68% in value voting in favor of the Rui Jing Hong Kong Scheme.

45.     On the same day as the Hong Kong Scheme Meetings, Kaisa announced to all the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors that the Kaisa Hong Kong Scheme and Rui Jing Hong Kong Scheme had been approved, and the Hong Kong Sanction Hearings (as defined herein) were scheduled for March 21, 2025 (the "Notice of Results of the Scheme Meetings"). The Kaisa Hong Kong Scheme Creditors and Rui Jing Hong Kong Scheme Creditors were informed that they could attend and raise any issues or objections at the Hong Kong Sanction Hearings. The Notice of Results of the Scheme Meetings was distributed, *inter alia*, through posting by Kroll on the Transaction Website, dissemination through the Clearing Systems, and public announcement on the HKEXnews Website. A copy of the Notice of Results of the Scheme Meetings is attached hereto as **Exhibit D**.

C.   The Hong Kong Sanction Hearings

46.     The sanction hearings in respect of the Kaisa Hong Kong Scheme and Rui Jing Hong Kong Scheme were held together on March 21, 2025 (the "Hong Kong Sanction Hearings").

47.     In anticipation of the Hong Kong Sanction Hearings, the Debtors each presented a petition dated March 11, 2025 to the Hong Kong Court seeking an order sanctioning each of

16

the Kaisa Hong Kong Scheme and Rui Jing Hong Kong Scheme (the "Hong Kong Schemes Petitions"). Copies of the Hong Kong Schemes Petitions are attached hereto as **Exhibit E.1** (with respect to Kaisa) and **Exhibit E.2** (with respect to Rui Jing). On March 21, 2025, the Hong Kong Sanction Hearings were held before the Hong Kong Court. No objections were raised by the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors at the Hong Kong Sanction Hearings. On March 24, 2025, the Hong Kong Court granted the orders sanctioning the Hong Kong Schemes (the "Hong Kong Sanction Orders"). Copies of the Hong Kong Sanction Orders are attached hereto as **Exhibit F.1** (with respect to Kaisa) and **Exhibit F.2** (with respect to Rui Jing).

48.     The Hong Kong Sanction Orders, *inter alia*, sanctioned the Kaisa Hong Kong Scheme and Rui Jing Hong Kong Scheme, and authorized and effectuated the restructuring set forth therein. On the same day, sealed copies of the Hong Kong Sanction Orders were duly registered with the Hong Kong Registrar. A copy of the delivery letter and the Hong Kong Registrar's acknowledgement of receipt dated March 24, 2025 is attached hereto as **Exhibit G** (the "Acknowledgement of Receipt").

49.     The Kaisa Hong Kong Scheme and Rui Jing Hong Kong Scheme became effective on their terms upon registration of the Hong Kong Sanction Orders with the Hong Kong Registrar. Each of the Kaisa Hong Kong Scheme Creditors and the Rui Jing Hong Kong Scheme Creditors is bound by the respective schemes as a matter of Hong Kong law, whether or not a particular creditor participated in the Scheme Meetings or voted in favor or against the scheme.

50.     Each of the Hong Kong Schemes, copies of which are annexed to the respective Kaisa Hong Kong Sanction Order and Rui Jing Hong Kong Sanction Order, provides that the courts of Hong Kong, including the Hong Kong Court, will have exclusive jurisdiction to hear

and determine any suit, action, or proceeding, and to settle any dispute that arises out of or in connection with the terms of the Hong Kong Schemes or their implementation, or out of any action taken or omitted to be taken under the Hong Kong Schemes or in connection with the administration of the Hong Kong Schemes.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 10, 2026

/s/ *Ang Chee Khian Desmond*
Ang Chee Khian Desmond
Sidley Austin

18